ALBERT W. JANSEN, APPELLANT, V. JOHN LEWIS ET AL., APPELLEES.

FILED NOVEMBER 4, 1897. No. 7524.

1. **Husband and Wife:** FRAUDULENT CONVEYANCES: PRESUMPTIONS. The doctrine of this court is that, when a conveyance from a husband to a wife is attacked by his creditor, the presumption will be indulged that such a conveyance is fraudulent. (*Carson v. Stevens,* 40 Neb., 112; *Kirchman v. Corcoran,* 51 Neb., 191, and cases there cited.)

2. ——: ——: ——. Such a presumption is not one of law, but a rule of evidence as to the burden of proof, and is applicable only to creditors whose debts existed at the time the conveyance was made.

3. ——: ——: RIGHTS OF CREDITORS: EVIDENCE. Where a conveyance from a husband to a wife is attacked as fraudulent by a subsequent creditor of the former, the burden is upon the creditor of showing by a preponderance of the evidence that such conveyance was made and accepted with a fraudulent purpose.

APPEAL from the district court of Cass county. Heard below before CHAPMAN, J. *Affirmed.*

*Tibbets Bros., Morey & Ferris,* and *Daniel F. Osgood,* for appellant.

*R. B. Windham, George M. Spurlock, C. S. Polk, Mockett & Polk,* and *Talbot & Allen, contra.*

RAGAN, C.

This is an appeal from a decree of the district court of Cass county. There is little, if any, dispute as to the

material facts of the case and the history of this litigation is briefly as follows: On April 29, 1890, John Lewis was the owner in fee of a tract of land in Cass county. This land was of the value of about $8,000 and incumbered by mortgages to the extent of $3,000. Lewis and his family occupied this land as a homestead. At this date Lewis owned another tract of land which was mortgaged to a man by the name of McClintic for $4,000; and about this time Lewis and his wife conveyed this land to McClintic in satisfaction of the mortgage debt. After the discharge of the debt to McClintic, besides the debt secured by mortgages upon the homestead tract, Lewis was indebted in small sums to various persons in an aggregate amount of about $600. With his affairs in this condition Lewis and his wife on said date conveyed by general warranty deed the land upon which they lived to one Joseph Barrett, who was their son-in-law. The consideration expressed in this deed is $5,000, and the assumption by Barrett of the mortgage liens existing against the real estate. This deed was duly filed for record soon after its execution. On May 3, 1890, Barrett and his wife conveyed this real estate to Gilley S. Lewis, the wife of John Lewis, the consideration expressed in the deed being $5,000 and the assumption by Gilley S. Lewis of the mortgage liens against the real estate. There is no evidence in the record,—further than the relationship existing between the parties, the financial condition of John Lewis, and the transactions between the parties,—which shows, or tends to show, for what purpose or for what actual consideration these conveyances were made. After these conveyances Mrs. Lewis and her husband continued to reside upon this real estate until October, 1892. At this time Mrs. Lewis and her husband conveyed this real estate to James M. Patterson for a consideration of $7,000 which was paid by Patterson as follows: He deducted from the consideration the mortgage liens upon the real estate; executed to Mrs. Lewis his two non-negotiable notes aggregating $3,800, and

paid off and discharged a mechanic's lien against the real estate, and some judgments existing against John Lewis. From the date of Patterson's purchase of this land until this suit was brought, Mrs. Lewis and her husband occupied it as tenants of Patterson, paying him rent therefor. All the indebtedness of John Lewis existing on April 29, 1890, appears to have been paid either by himself or by Patterson about the time of the conveyance of the land to the latter, or soon afterwards, except a balance of some $90 and interest due on a note of Elzy Lewis, a son of John Lewis, and which note John Lewis had signed as surety for his son. It is not clear from the record whether this balance remained unpaid or not at the date of the bringing of this suit. In November, 1890, the said Elzy Lewis became indebted to Albert W. Jansen, and as an evidence of this debt he gave to Jansen his promissory note for $564.67. This note John Lewis signed as surety for his son. On July 7, 1893, a judgment was rendered in the county court of Lancaster county against John and Elzy Lewis on this last-mentioned note. An execution seems to have been issued out of said county court on said judgment and returned wholly unsatisfied. On September 11, 1893, Albert W. Jansen filed his petition in the district court of Cass county against the said John Lewis, Gilley S. Lewis, his wife, and the said James M. Patterson, alleging his recovery of the judgment against John Lewis in the county court of Lancaster county; that the transcript of such judgment had been duly filed and docketed in the office of the clerk of the district court of Cass county; an execution issued out of said court on said judgment and returned by the sheriff wholly unsatisfied; that the said John Lewis was insolvent and that said judgment was wholly unsatisfied. The bill then recited the conveyances of the real estate hereinbefore mentioned; alleged that said conveyances were made voluntarily without consideration, and for the fraudulent purpose of hindering and delaying the creditors of John Lewis, and prayed that such convey-

ances might be set aside and said real estate sold and the proceeds applied to the payment of Jansen's judgment. The parties made defendants to this action filed answers which traversed every material allegation of Jansen's petition. The district court found the issues for the defendants and dismissed Jansen's case and he has appealed.

The decree of the district court must be affirmed for the reason that the evidence in the record justified the district court in finding that the conveyance of April 29, 1890, from John Lewis and wife to Joseph Barrett, and the conveyance from Barrett and wife on May 3, 1890, to Gilley S. Lewis, were not fraudulent. Since Patterson claims title under Barrett, if the conveyance from Lewis and wife to Barrett and from Barrett and wife to the wife of Lewis were valid, we need not discuss Patterson's title. The contention of Jansen is that the conduct of Lewis and wife in conveying their real estate to their son-in-law Barrett, and he and his wife conveying it back to John Lewis' wife, authorizes the inference that both these conveyances were voluntarily made without consideration, and for the purpose of vesting the title to this real estate in the wife of John Lewis. For the purposes of this case only we assume that this contention is correct. Another contention of Jansen is that because of the relationship existing between John Lewis and his wife and Barrett, their son-in-law, a presumption exists that these conveyances were made for the purpose of defrauding the creditors of John Lewis; and the burden was upon the defendants of showing that these conveyances of April 29, 1890, and May 3, 1890, were made in good-faith; and as there is no evidence upon that subject further than the relationship of the parties and the conveyances, it stands proved that the conveyances made by Lewis and wife and by Barrett were fraudulent.

By an unbroken line of decisions the doctrine is established in this state that when a conveyance from a husband to a wife or a wife to a husband is attacked by his

or her creditor the presumption will be indulged that
such conveyance is fraudulent, and the burden rests upon
the husband or wife, as the case may be, of showing the
good faith of the transaction. (See *Carson v. Stevens*, 40
Neb., 112; *Kirchman v. Kratky*, 51 Neb., 191, and cases
there cited.) But this presumption is not one of law, for
the statute makes the question of fraudulent intent one
of fact. (See Compiled Statutes, ch. 32, sec. 20.) It is
merely a rule of evidence as to the burden of proof. But
when the cases just cited speak of a conveyance from a
husband to a wife or a wife to a husband being *prima
facie* fraudulent as against creditors, what creditors are
referred to? Certainly existing creditors. We know of
no case in which this court has ever held that a convey-
ance from a husband to a wife was *prima facie* fraudulent
as against a subsequent creditor of one of the parties to
such conveyance, nor do we think any well-considered
case can be found which so holds; but that when a subse-
quent creditor attacks a conveyance from a husband to a
wife as being fraudulent the burden is upon him to es-
tablish such a fraud. Jansen is a subsequent creditor of
John Lewis. At the time he became indebted to Jansen
the title to the real estate in controversy was of record in
the name of John Lewis' wife, and in order for Jansen to
have this conveyance from Lewis to his wife through
Barrett set aside as fraudulent, the burden is upon Jan-
sen to show that the transaction was in fact fraudulent.
We do not doubt that a conveyance from a husband to
his wife may be overturned by a subsequent creditor as
fraudulent upon its being established that the convey-
ance was made with the expectation of contracting the
debt on account of which it is sought to set aside the
conveyance; but there is nothing of this character in this
record and that subject need not be discussed.

*Bank of United States v. Housman*, 6 Paige Ch. [N. Y.],
526, was a bill filed by a subsequent creditor to set aside
certain real estate conveyances which he alleged were
fraudulent. The chancellor summed up his conclusions

in the syllabus as follows: "Where there is no evidence of fraud in fact in the giving of the deed, nor in subsequent acts of the parties from which fraud can be legally inferred, subsequent creditors of the grantor cannot avoid the deed by showing that the consideration expressed therein was not the true consideration." *Claflin v. Mess*, 30 N. J. Eq., 211, was a bill filed by a subsequent creditor to set aside conveyances of real estate made by his debtor on the ground that such conveyances were fraudulent. The court said: "It is a sound principle of law as well as of morals that a man must be just before he is generous. But there is no such presumption in respect to subsequent debts, and a creditor whose debt is incurred subsequent to the making of a voluntary deed, in order to impeach it, must show fraud in fact. * * * For present purposes it will be assumed, notwithstanding some evidence to the contrary, that the deed in controversy is without sufficient consideration to support it against creditors whose debts existed at the time it was made. The complainant's rights as a creditor arose long after the title he seeks to avoid became a matter of public record. The evidence will not support a finding that the deed in question was made with the intent to defraud future creditors." In *Webb v. Roff*, 9 O. St., 430, the rule is formulated as follows: "A conveyance made without consideration by one indebted at the time, cannot be avoided by subsequent creditors without showing actual fraud or a secret trust for the benefit of the grantor." In *Lyman v. Cessford*, 15 Ia., 229, the rule is clearly and tersely stated in the following language: "To render a voluntary conveyance fraudulent, as to subsequent creditors, it must be made to appear, either by positive evidence or by facts which justify the inference, that it was executed with a fraudulent intent on the part of the grantor."

The appellant has not brought himself within the doctrine of these cases. The conduct of the parties subsequent to the conveyances, in using the proceeds of the

sale of the land to pay the debts existing against John Lewis at the time he and his wife conveyed this land to Barrett, was evidence which tended at least to show that the conveyances were made in good faith. Whether the evidence would have sustained a finding that the conveyances were made in bad faith it is not necessary to decide. It is sufficient that it justified the finding of the court that the transactions were free from fraud. The decree of the district court is

AFFIRMED.