IN RE ESTATE OF ELLIS WHITESIDE, DECEASED. ELBERT WHITESIDE ET AL., APPELLEES, V. MABEL MAE WHITESIDE, ADMINISTRATRIX OF THE ESTATE OF ELLIS WHITESIDE, DECEASED, ET AL., APPELLANTS.

67 N. W. 2d 141

Filed November 26, 1954. No. 33584.

*Guy Laverty, Keith J. Kovanda, and Davis & Vogeltanz,* for appellants.

*Manasil & Erickson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Three heirs at law of Ellis Whiteside, deceased, filed objections in the county court to the final and supplemental report and account with petition for settlement and distribution filed therein by Mabel Mae Whiteside, administratrix of decedent's estate.

Hereinafter Mabel Mae Whiteside will be designated as plaintiff-administratrix, or as plaintiff, dependent upon the capacity in which she claimed rights as administra-

trix or for herself individually. The heirs at law will be designated as defendants, and Ellis Whiteside, who died intestate October 12, 1952, will be designated by name or as decedent.

In their objections, so far as important here, defendants alleged substantially that plaintiff-administratrix failed and neglected to account for and credit the estate with: (1) A described number of cattle and livestock; (2) described and enumerated ranch machinery and other equipment; and (3) a one-half interest in the proceeds from a sale of the Whiteside and Bredthauer partnership personal property, all belonging to the estate. Further, defendants objected to the allowance of $129.52 paid by plaintiff on March 5, 1953, for 1952 real estate taxes, and the allowance of other items which require no discussion.

After a hearing, the county court rendered a decree which in effect overruled and denied defendants' objections to items (1) and (2) aforesaid upon the ground as claimed by plaintiff that such property was not a part of the estate because owned by plaintiff and decedent as joint tenants with right of survivorship. However, such decree sustained defendants' objections to item (3) aforesaid upon the ground that Ellis Whiteside and Dale Bredthauer as partners each owned a one-half interest in such property and that a one-half interest therein was thus a part of the estate because not owned by plaintiff and decedent as joint tenants with right of survivorship as claimed by plaintiff. Further, the decree sustained defendants' objections to and disallowed the payment of $129.52 for taxes upon real estate, concededly owned by plaintiff and decedent as joint tenants with right of survivorship and not a part of the estate. Judgment was rendered accordingly. Therefrom defendants appealed, and plaintiff, both as administratrix and for herself individually, cross-appealed to the district court where voluminous pleadings were filed which need not be summarized here.

Therein, after trial upon the merits, a decree was rendered, the effect of which was to determine heirship about which there is no question, and to find and adjudge that all of defendants' objections should be sustained. In the light thereof such decree made an accounting of all cash receipts, including proceeds from a sale of the partnership property and some livestock, less scheduled disbursements, which left a cash balance of $3,765.32 on hand for distribution as property of the estate. In addition, it found and adjudged that plaintiff had on March 6, 1953, converted to her own use and benefit all of the cattle, livestock, machinery, and equipment belonging to the estate, the value of which was then $27,794. In that connection, it was stipulated by the parties herein at the trial that: "* * * if it is finally found that Ellis Whiteside was the sole owner of the livestock and farm machinery at the time of his death, that in such event, the value of said livestock on March 6, 1953, was $26,549.00, and the value of the farm machinery on the ranch was $1245.00, and that said property in that event was converted by Mabel Mae Whiteside to her own use on March 6, 1953; and in that event there would be no additional charge for the cattle staying on the premises of Mabel Mae Whiteside." In conformity with such stipulated values plus the cash on hand aforesaid, it was found and adjudged that there was due the estate from plaintiff personally and as administratrix the sum of $31,559.32, which should draw interest at 6 percent per annum from March 6, 1953; that all expenses in connection with said estate which were allowed in the schedule identified as "disbursements" should be approved along with any unpaid probate costs and inheritance taxes due, which should be chargeable to the estate. It was therefore ordered, adjudged, and decreed that judgment be rendered accordingly against plaintiff personally and as administratrix. Costs of the action were taxed to plaintiff personally and not against the estate.

Motion for new trial filed by plaintiff as administratrix and in her individual behalf was overruled, from which an appeal was taken to this court, assigning substantially that the judgment was not sustained by the evidence but was contrary thereto and contrary to law. We conclude that the assignments should not be sustained.

At the outset there are three matters which may be first disposed of. On March 5, 1953, plaintiff paid $129.52 for the 1952 real estate taxes upon real estate which was concededly owned by plaintiff and decedent as joint tenants with right of survivorship. Decedent died October 12, 1952, and as provided by section 77-203, R. R. S. 1943, such tax was not due and payable and did not become a lien or encumbrance on the property until January 1, 1953, next following the levy thereof, long after plaintiff had become the sole owner of the real estate which was never any part of the estate. Thus credit for the allowance of such item was properly refused. See, also, County of Madison v. School District No. 2, 148 Neb. 218, 27 N. W. 2d 172.

Plaintiff, without citing any authority, also questioned the right of the district court upon appeal to render a conversion money judgment with interest from date of conversion against plaintiff personally or as administratrix in this proceeding. Such contention has no merit. It is answered conclusively in Egan v. Bunner, 155 Neb. 611, 52 N. W. 2d 820, and authorities cited therein. Further discussion is not required.

On March 6, 1953, plaintiff filed an application in the county court requesting it to transfer the cattle and other livestock, machinery, and equipment to her personally for the alleged reason that it was owned by plaintiff and decedent as joint tenants with right of survivorship. Thereafter, on the very next day, without any notice to or opportunity to be heard by defendants or other parties in interest, the county court entered a purported order sustaining the request and transfer-

ring all such property to plaintiff personally. Plaintiff here contends, as she did in the district court, that such order, unappealed from, was final and conclusive. Such contention has no merit. In that connection, such an order could not be final and conclusive because it was purely interlocutory in character.

In Bachelor v. Schmela, 49 Neb. 37, 68 N. W. 378, this court held: "The law recognizes a substantial difference between the final settlement of the accounts of an executor or administrator and those made annually or at stated periods during the course of the administration. A final settlement made pursuant to notice to persons interested in the estate is in the nature of a judgment and conclusive as to all matters included therein until reversed or set aside by means of a direct proceeding, or impeached on account of fraud, while an interlocutory ex parte accounting is but prima facie correct and subject to re-examination so long as the administration account remains unsettled."

In In re Estate of Wilson, 97 Neb. 780, 151 N. W. 316, it was held: "Orders of the probate court adjusting or correcting accounts of an administrator, made while he is acting as such administrator, are interlocutory and not final until his discharge as administrator and final settlement of his accounts upon such discharge." See, also, In re Estate of Hansen, 117 Neb. 551, 221 N. W. 694.

The primary issue here is whether the trial court erred in concluding that all of the personal property involved belonged to the estate, contrary to plaintiff's contentions that it was owned by plaintiff and decedent as joint tenants with right of survivorship or as tenants in common, or that in any event plaintiff owned a one-half interest therein contractually or upon equitable grounds. We conclude that the trial court did not err in so concluding.

Peterson v. Massey, 155 Neb. 829, 53 N. W. 2d 912, was factually comparable in material respects with the case at bar. Such case adversely disposes of plaintiff's contention herein that contractually or upon equitable

grounds she at all times owned a one-half interest in the personal property here involved. Therein as here plaintiff, who had the burden of proof, failed to establish such contention by relevant competent evidence. To discuss such contention further herein except by reference to facts subsequently recited would serve no purpose except to unduly prolong this opinion.

On the other hand, concededly the law permits either a joint tenancy or a tenancy in common to exist with relation to personal property. Further, either of such relationships may be created by act of the parties contractually or by conveyance, grant, or devise, although a tenancy in common may, under proper circumstances, be the product of an error, failure, or mistake in an attempt to create a joint tenancy. See, Anson v. Murphy, 149 Neb. 716, 32 N. W. 2d 271; 14 Am. Jur., Cotenancy, § 20, p. 90.

However, it is generally held that a joint tenancy can be created only by act of the parties. Buford v. Dahlke, 158 Neb. 39, 62 N. W. 2d 252; 14 Am. Jur., Cotenancy, § 11, p. 82. In that regard, a joint tenancy in personal property may be created by oral agreement, if it is established by a preponderance of evidence, the quality of which is clear, satisfactory, and convincing in character. 48 C. J. S., Joint Tenancy, § 3, p. 914. As stated in 48 C. J. S., Joint Tenancy, § 3, p. 917: "The intent of the parties is controlling as to whether or not a joint tenancy is created, but such a construction will be avoided unless the intention to create a joint tenancy is clearly manifested." On the other hand, as stated in 86 C. J. S., Tenancy in Common, § 7, p. 364: "In general, a tenancy in common springs up or exists whenever property is owned concurrently by two or more persons under a conveyance or under circumstances which do not either expressly or by necessary implication call for some other form of cotenancy." See, also, 86 C. J. S., Tenancy in Common, § 11, p. 373, where it is said: "One claiming a part interest in property as a

tenant in common has the burden of alleging and proving such matter by a preponderance of the evidence; but where a transfer has been made to two or more individuals a tenancy in common ordinarily is presumed."

As recently as Buford v. Dahlke, *supra,* this court held: "The creation as well as the continued existence of an estate in joint tenancy under the common law, which is allowed to exist in this jurisdiction, requires a unity of possession, a unity of interest, a unity of time, and a unity of title in all holding an interest in such estate.

"Any act of a joint tenant which destroys one or more of its necessarily coexistent unities operates as a severance of the joint tenancy and extinguishes the right of survivorship."

Further, as stated in 14 Am. Jur., Cotenancy, § 16, p. 87: "Unlike the joint tenancy, the tenancy in common is characterized by a single essential unity—that of possession, or of the right to possession, of the common property. If such unity exists, there is a tenancy in common irrespective of any other unities; and if it does not exist the estate is not a tenancy in common." See, also, 86 C. J. S., Tenancy in Common, § 7, p. 364.

Section 8-167, R. R. S. 1943, provides: "When a deposit in any bank in this state is made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors, such deposit, or any part thereof, or increase thereof, may be delivered or paid to either of said persons or to the survivor or survivors in due course of business." By analogy therefrom, together with reasoning and language appearing in Crowell v. Milligan, 157 Neb. 127, 59 N. W. 2d 346, it is clear that when there is such an account in existence and one joint tenant with knowledge and consent of the other, actual or implied, withdraws the whole or any part of such fund and invests same for his own purposes or benefit, and the character of the fund is thus changed, then with regard to that portion so withdrawn

there has been a severance of the joint tenancy with extinguishment of the right of survivorship.

In the light of the rules and authorities heretofore cited and the fact that this cause is concededly for trial de novo, we have examined the record. It discloses that plaintiff and decedent were married July 4, 1920. Decedent died intestate October 12, 1952. They had no children. At the time of the marriage, decedent owned a few head of cattle which were sold, and they moved to the home of decedent's father until fall, when they left for Missouri. There decedent worked as a garage mechanic until the following summer. They then moved to Louisville, Nebraska, where for about a year and one-half decedent worked on a railroad and at odd jobs for his uncle. Having then accumulated four horses, one cow, and $71, they rented and moved to a farm northwest of Burwell. During several years they were tenants on different farms in that community. Plaintiff always kept house and helped decedent raise or care for the livestock and do the farm work. Decedent also did some trucking of hay and grain, and they gradually accumulated cattle, other livestock, farm machinery, and equipment. In 1940 or 1941 they moved to the sizeable Furnow ranch. There they farmed and raised chickens, turkeys, cattle, and other livestock. On October 8, 1943, they contracted to purchase 1,240 acres of such ranch for $12,400. A warranty deed thereto, signed by grantor January 24, 1944, and acknowledged February 21, 1944, was filed of record November 10, 1950. Plaintiff and decedent were grantees therein as joint tenants with right of survivorship. On that land they continued to raise chickens, turkeys, and cattle, together with other ranch products, sold same, and applied the proceeds upon the purchase of ranch equipment, the purchase price of the ranch, and the construction of a new home thereon, together with other substantial improvements. After February 9, 1948, payments therefor

were made out of their joint bank account hereinafter discussed.

The cattle on the ranch were all branded with a brand recorded in the name of decedent in the office of the Secretary of State, as provided by section 54-104, R. R. S. 1943, and at the time of decedent's death such cattle unsold were so branded. They were also then insured against loss from fire and lightning by a policy in decedent's name, with any loss thereunder payable to him or his legal representatives. After decedent's death such brand was renewed and recorded in plaintiff's name at her instance and request.

As provided by section 54-109, R. R. S. 1943: "In all suits at law or in equity, or in any criminal proceedings, wherein the title to animals is an issue, the certified copy provided for in section 54-108 shall be prima facie evidence of the ownership of such animal by the person whose brand or mark it may be." Bendfeldt v. Lewis, 149 Neb. 107, 30 N. W. 2d 293, discussed such section and held that: "A brand on livestock is only prima facie evidence of ownership which may be rebutted." However, such presumption was never rebutted by any relevant competent evidence in the case at bar.

At the time of decedent's death, the title to the family car was recorded and held in joint tenancy with right of survivorship, but the title to a truck and a jeep listed in the inventory filed herein was recorded and held in the name of decedent only.

On February 9, 1948, plaintiff and decedent established a joint bank account in the Bank of Burwell, in which they deposited money received from the sale of cattle and other products of the ranch, and decedent's salary or other profits from the partnership hereinafter referred to. From that period on, all of their debts and expenses of every kind were generally paid therefrom with checks drawn by plaintiff or decedent or both, as they concededly had a right to do.

Thereafter, on April 17, 1948, plaintiff and decedent

purchased a plot of ground in Burwell for $500. The title thereto was taken by plaintiff and decedent as joint tenants with right of survivorship. Thereon they constructed a new home where they subsequently resided, employing others to generally operate the ranch. Such property was paid for out of their joint bank account.

Late in 1948 or the first part of 1949, decedent tired of idleness and sought some work to do. One Dale Bredthauer then owned the John Deere implements, parts, and feed business in Burwell. Decedent had been helping the John Deere dealers with machinery or implements and seemed interested in such work, so Bredthauer proposed that decedent buy part of the business upon a 50-50 Whiteside and Bredthauer partnership basis of operation. Decedent was also to receive a salary of $250 a month for operating the business as well as his one-half share of the net profits. The proposal was accepted by decedent and subsequently his salary as well as profits were deposited in plaintiff's and decedent's joint bank account. Plaintiff was present when the proposal was made and explained. She had full knowledge of the entire transaction, talked the whole matter over several times with her husband, and knew that the consideration of $4,478.18 for purchase of a one-half interest by decedent in the partnership business would be and was paid for by decedent's check out of their joint bank account. With that knowledge also plaintiff subsequently assisted in operation of the business upon several occasions. In that connection, decedent subsequently made out and returned a "U. S. Partnership Return of Income" for 1951, reporting that Ellis Whiteside and Dale Bredthauer were each entitled to and did receive one-half the net income from the partnership. Also, plaintiff and decedent made out and reported a joint U. S. income tax return as husband and wife reflecting the same condition and result. Likewise, for 1952 plaintiff made and separately reported a partnership income tax return, as well as one for herself, de-

cedent, and the estate of decedent jointly, with three claimed exemptions. After decedent's death his one-half interest in the partnership was sold by plaintiff, acting both as administratrix and for herself individually, receiving therefor some $13,300, all of which she subsequently claimed as a joint tenant with right of survivorship.

Again on November 6, 1950, plaintiff and decedent, for a consideration of $8,250, paid out of their joint bank account, purchased 640 more acres of ranch land. The warranty deed therefor, however, conveyed such property to them as joint tenants with right of survivorship. The only encumbrance remaining against any of the real estate heretofore discussed at the time of decedent's death was about $1,250 with interest. Directly then we have in question only the remaining cattle and livestock, together with the machinery and partnership property proceeds, which all clearly belong to the estate.

Several witnesses called by plaintiff simply testified substantially that decedent had told them upon different occasions that he and plaintiff had both worked hard, owned their property jointly, and he had it arranged so that whoever died first the other would get all the property. To some of plaintiff's witnesses he simply said that he wanted it fixed so that such would occur. As a matter of fact, that was concededly done, except with relation to that part of the personal property here involved.

Pleadings filed by plaintiff as administratrix and in her own behalf in the county court indicate clearly that she so understood the situation. Her petition for administration admitted that decedent died intestate, "possessed of * * * personal property of a value unknown to your petitioner." Both her inventory and final report filed in the county court materially verified that fact in one form or another, contrary to present contentions. Her request to sell the described interest in the Whiteside and Bredthauer partnership property, which was granted,

clearly indicated that she made no claim to own the same as joint tenant with right of survivorship. Her request to sell certain cattle, which was granted, stated "That the cattle belonging to said estate is a one-half interest therein and a one-half interest belongs to your petitioner individually."

We find no competent evidence in this record which would upon any theory justify a conclusion that plaintiff and decedent ever contractually or by conveyance, grant, or devise owned the personal property here involved as joint tenants with right of survivorship or as tenants in common. Likewise, plaintiff failed to establish that she owned a one-half interest therein either contractually or upon any equitable theory. Other questions are argued but they require no discussion.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs of this action are taxed to plaintiff personally and not against the estate.

AFFIRMED.