FRANCES L. DEFORGE, ADMINISTRATRIX OF THE ESTATE OF
ADELAIDE RAYMOND, DECEASED, APPELLANT, V. ROBERT K.
PATRICK, EXECUTOR OF THE ESTATE OF NELLIE F. CHAPLIN,
DECEASED, APPELLEE.

76 N. W. 2d 733

Filed May 4, 1956.   No. 33936.

*Mothersead, Wright & Simmons,* for appellant.

*Robert W. Patterson,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Scotts Bluff County in an action wherein Frances L. DeForge as administratrix of the estate of Adelaide Raymond, deceased, sought, on various grounds, to hold sufficient of the assets now in the possession and control of Robert K. Patrick as executor of the estate of Nellie F. Chaplin, deceased, to pay the creditors of Adelaide Raymond and the expenses of administering her estate. The administratrix asked the district court to require the executor to hold and pay over to her, as administratrix, a sufficient amount for that purpose. The trial court denied her the relief she asked for. She thereupon filed a motion for a new trial and has taken this appeal from the overruling thereof.

Adelaide Raymond and Nellie F. Chaplin were elderly sisters. At all times herein material they lived together in a home located at 2401 Avenue D in Scottsbluff, Nebraska, and legally described as Lot 33, Raymond Addition to Scottsbluff, Nebraska. This residence property, together with a brick business building located on Broadway in Scottsbluff and legally described as the south 4 inches of Lot 19 and all of Lot 20, Block 11, Original Town of Scottsbluff, Nebraska, were, prior to January 24, 1949, owned by Adelaide Raymond. On January 24, 1949, Adelaide Raymond, who was then 74 years of age, conveyed these two properties to herself and Nellie Chaplin, who is the same person as Nellie F. Chaplin herein referred to, as joint tenants and not as tenants in common. The deed goes on to

recite: "It being the intention of all parties hereto, that in the event of the death of either of said grantees, the entire fee simple title to the real estate described herein shall vest in the surviving grantee." This deed was recorded in the office of the register of deeds for Scotts Bluff County on January 26, 1949, and recorded in Book 62 of Deeds at page 355.

On July 24, 1944, a joint survivorship checking account was opened in the Scottsbluff National Bank of Scottsbluff, Nebraska, in the name of the two sisters. It continued in this status up until Adelaide Raymond's death.

Adelaide Raymond died on April 15, 1953. Her estate is being administered in the county court of Scotts Bluff County and appellant is the duly qualified and acting administratrix thereof. Several claims have been filed in this estate. They include a claim for personal taxes for the year 1953 in the sum of $7.97; a claim by Dr. Ted E. Riddell in the sum of $882.50 for professional services rendered to the deceased from January 10, 1952, through February 5, 1953; a claim by Dr. Paul Q. Baker in the sum of $78.50 for professional services rendered to the deceased between March 20 and April 8, 1953; and a claim by the Sisters of St. Francis, Denver, Colorado, a Colorado corporation doing business in Scottsbluff as the St. Mary's Hospital in the sum of $465.90 for services, medicines, etc., rendered to the deceased while she was in the hospital from April 3 to April 15, 1953.

We think the claims of Dr. Ted E. Riddell, Dr. Paul Q. Baker, and the Sisters of St. Francis relate themselves to the last illness of Adelaide Raymond.

The record shows that at the time of her death Adelaide Raymond left no other property out of which these claims, if allowed, can be paid other than that held in joint tenancy.

At the time of her death the joint account in the Scottsbluff National Bank had a balance of $1,931.85.

The evidence shows that since June 1948 Adelaide Raymond had not enjoyed very good health but there is nothing in the record to show it in any way affected her mind. It appears she was at all times fully capable of taking care of her business.

Nellie F. Chaplin died on May 15, 1953. Her estate is being probated in the county court of Scotts Bluff County. Appellee is the qualified and acting executor thereof. He has taken possession of the property hereinbefore referred to as being held in joint tenancy and has sold the two pieces of real estate. He now has in his possession the proceeds thereof.

The question is, can appellant, on the basis of any of the grounds she has advanced, hold any of this property for the purpose of paying the creditors and expenses of administration of the estate of Adelaide Raymond, deceased?

Appellant says she believes she has an equitable interest in the funds received from the property hereinbefore referred to to the extent asked. That the equitable ownership of property can be in one person and the legal title in another is beyond question. See, Buford v. Dahlke, 158 Neb. 39, 62 N. W. 2d 252; Jewett v. Black, 60 Neb. 173, 82 N. W. 375.

This state has always recognized common law joint tenancy with right of survivorship. See, Sanderson v. Everson, 93 Neb. 606, 141 N. W. 1025; Tyrrell v. Judson, 112 Neb. 393, 199 N. W. 714; Arthur v. Arthur, 115 Neb. 781, 215 N. W. 117; Olander v. City of Omaha, 142 Neb. 340, 6 N. W. 2d 62; Stuehm v. Mikulski, 139 Neb. 374, 297 N. W. 595, 137 A. L. R. 327; Anson v. Murphy, 149 Neb. 716, 32 N. W. 2d 271; Buford v. Dahlke, *supra*. In fact, joint tenancies have been approved by the Legislature. See § 76-118, R. R. S. 1943.

The deed here is within the authorization of section 76-118, R. R. S. 1943, passed by the 1941 Legislature, although it would have been deficient to create a common law joint tenancy in the absence of such statutory

enactment. See our holdings in Stuehm v. Mikulski, *supra,* and Anson v. Murphy, *supra.*

Joint tenancies are created by contract. See Sanderson v. Everson, *supra.* They are not favored and, if not expressly created by contract, the law presumes the tenancy is in common. See, Sanderson v. Everson, *supra;* Olander v. City of Omaha, *supra;* In re Estate of Vance, 149 Neb. 220, 30 N. W. 2d 677; Bodeman v. Cary, 152 Neb. 506, 41 N. W. 2d 797; Buford v. Dahlke, *supra;* Whiteside v. Whiteside, 159 Neb. 362, 67 N. W. 2d 141.

As stated in Sanderson v. Everson, *supra:* "\* \* \* in order to create a joint tenancy, the purpose must be clearly expressed, otherwise the tenancy will be held to be in common."

However, "\* \* \* if the purpose to create a joint tenancy is clearly expressed in a deed of conveyance of real estate, the law will permit the intention of the parties to control, and a joint tenancy with right of survivorship will be created." Sanderson v. Everson, *supra.* See, also, Olander v. City of Omaha, *supra;* In re Estate of Vance, *supra;* Bodeman v. Cary, *supra.* The intention of the parties must govern. Sanderson v. Everson, *supra.*

As stated in Elrod v. Heirs, Devisees, etc., 156 Neb. 269, 55 N. W. 2d 673: "The court in interpreting a conveyance of real estate is by legislative declaration required to carry into effect the true intent of the parties so far as it can be ascertained from the whole instrument, if not inconsistent with law. § 76-205, R. R. S. 1943. Each word and provision in the conveyance must be given such significance as will make effective the intention of the parties."

And, in Langan v. Langan, 135 Neb. 229, 280 N. W. 903, we said: "The intention of the parties to a deed must be gathered from the whole instrument itself. Comp. St. 1929, sec. 76-109."

There can be no doubt from the language used, which

has been hereinbefore set forth, that it was the intention of the parties to the deed under consideration to create a joint tenancy with right of survivorship; that is, upon the death of one the survivor should take the whole title. It would vest the whole title in the survivor free from the debts of the deceased joint tenant. See, Stuehm v. Mikulski, *supra;* Anson v. Murphy, *supra.* As stated in Stuehm v. Mikulski, *supra:* "* * * upon the death of one of two cotenants holding such an estate, the survivor takes the entire fee free from the debts of the deceased cotenant * * *."

It is, of course, true, as stated in Anson v. Murphy, *supra:* "* * * an estate in joint tenancy can be destroyed by an act of one joint tenant which is inconsistent with joint tenancy and that such an act has the effect of destroying the right of survivorship incidental to it." See, also, Buford v. Dahlke, *supra;* Whiteside v. Whiteside, *supra.* We said in Whiteside v. Whiteside, *supra:* "Any act of a joint tenant which destroys one or more of its necessarily coexistent unities operates as a severance of the joint tenancy and extinguishes the right of survivorship."

"In order to effect a severance of the jointure, the effect of the act or transaction, whether it is voluntary or involuntary insofar as the joint tenant is concerned, must be to divest him of his estate in joint tenancy." Gau v. Hyland, 230 Minn. 235, 41 N. W. 2d 444.

And if such occurs, we said in Anson v. Murphy, *supra:* "After the destruction of a joint tenancy by a joint tenant, nothing more than a tenancy in common remains."

We find no evidence of any act by either grantee which would have such effect unless it can be said that the incurring of these debts by Adelaide Raymond, for which claims have been filed against her estate, had such effect. We do not think the mere incurring of debts by one of two joint tenants, subsequent to the cre-

ation thereof, has the effect of destroying such joint tenancy.

Appellant suggests we now declare that there is no longer such a thing in this state as a joint tenancy with right of survivorship and that all estates so denominated be declared tenancies in common with right of survivorship. As such they would be subject to the debts of the deceased joint owner. See, Stuehm v. Mikulski, *supra;* Anson v. Murphy, *supra.* Appellant bases this argument, in part, on the fact that the 1955 Legislature has made jointly held property subject to the debts of a deceased joint tenant under certain conditions as therein set forth. See, Laws 1955, c. 110, p. 295; § 30-624, R. S. Supp., 1955.

It seems to us if public policy should so require the Legislature could abolish joint tenancy. The fact is it not only has not done so but has, through the legislation hereinbefore referred to, expressly acknowledged and approved its existence. We find no reason sufficient for our doing so.

"The relation of and estate of joint tenancies may be created in any kind of personal property that is subject to be held in severalty." In re Estate of Vance, *supra.*

The joint survivorship checking account in the Scottsbluff National Bank in the name of Adelaide Raymond and Nellie Chaplin is specifically controlled by section 8-167, R. R. S. 1943, which provides: "When a deposit in any bank in this state is made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors, such deposit, or any part thereof, or increase thereof, may be delivered or paid to either of said persons or to the survivor or survivors in due course of business."

This statute fixes the property rights of the persons named in the deposit where compliance with the statute has been had. Scriven v. Scriven, 153 Neb. 655, 45 N. W. 2d 760; Rose v. Kahler, 151 Neb. 532, 38 N. W.

2d 391; Young v. McCoy, 152 Neb. 138, 40 N. W. 2d 540. Upon the death of one payee the survivor takes. the whole legal title free of any debts of the deceased unless a contrary intent affirmatively appears from the terms of the deposit. Rose v. Kahler, *supra.* No such contrary intent appears from the deposit herein involved.

Was the conveyance made with intent to hinder, delay, or defraud expected creditors?

It should be borne in mind that although the grantees were, at the time, elderly sisters, this is not a case involving debts existing at the time of the conveyance nor of contingent liabilities then in being. The debts for which claims have been filed against the estate of Adelaide Raymond, deceased, were not incurred until 4 years or more after the deed was executed and recorded and not until more than 8 years after the joint survivorship checking account was opened. Consequently the principles applicable and controlling in cases involving existing or contingent liabilities have no application. The rule here controlling is stated in Ayers v. Wolcott, 66 Neb. 712, 92 N. W. 1036, as follows: "The rule seems to be well settled that, to set aside a conveyance on the ground that it is fraudulent as to subsequent creditors, such creditors must allege and prove that such conveyance was made with intent to defraud subsequent creditors and in contemplation of such future indebtedness." See, also, Jansen v. Lewis, 52 Neb. 556, 72 N. W. 861; Creason v. Wells, 158 Neb. 78, 62 N. W. 2d 327.

While it is true that Adelaide Raymond was not in very good health at the time she executed the deed to herself and her sister and had the same recorded, we do not think it can be said that debts incurred in connection with her last illness some 4 years later were then in contemplation and that she executed the deed with an intent to avoid the payment thereof.

If there is to be any further or additional relief for creditors from the legal effect of joint tenancies by those

dealing with persons who hold their property in joint tenancy with right of survivorship than what has already been enacted by the Legislature we think it should come from the same source.

Having come to the conclusion that the trial court was correct in denying appellant the relief she sought we affirm its judgment doing so.

AFFIRMED.