In re Estate of Raymon A. Ogier, deceased.
J. M. White, Executor of the Last Will and Testament
of Raymon A. Ogier, deceased, appellee, v. Ray E.
Ogier and Joanne K. Ogier, minors, by James E.
Schneider, Guardian ad litem, et al., appellants.

125 N. W. 2d 68

Filed November 22, 1963.   No. 35471.

James E. Schneider, for appellants.

Maupin, Dent, Kay & Satterfield, Clinton J. Gatz, and Donald E. Girard, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action under the Declaratory Judgments Act to determine the ownership of certain personal property listed in the executor's inventory in the estate of Raymon A. Ogier, deceased. The trial court found for the executor and the guardian ad litem of Ray E. Ogier and Joanne K. Ogier, minor defendants, has appealed.

Raymon A. Ogier died testate on April 25, 1960. He left surviving his widow, Irene Ogier, and two adopted children, Ray E. Ogier and Joanne K. Ogier, twins of the age of 16 years. By the terms of the will of the deceased, Irene Ogier was the legatee and devisee of personal and real property inventoried at approximately $175,000 about which there appears to be no dispute. The testator also conveyed certain described business properties

and all interest in two partnerships known as Ogier's of Wallace and Ogier's of Stratton in trust for the benefit of Irene Ogier during her lifetime, with the power of appointment, the remainder otherwise to become a part of the corpus of trusts set up for Ray E. Ogier and Joanne K. Ogier. The residue of the estate was set up in the form of trusts with Ray E. Ogier and Joanne K. Ogier as the beneficiaries. The issues in this case are whether or not certain securities hereafter described were held in joint tenancy with Irene Ogier and became her property as survivor, or whether or not they, or some part of them, are a part of the residue of the estate and therefore a part of the corpus of the trusts established for the benefit of Ray E. Ogier and Joanne K. Ogier. Specific legacies were given to Margaret White, a cousin of the deceased, and her husband, J. M. White. The latter was the assistant manager of Ogier's of North Platte and a faithful employee of the deceased and his business enterprises. J. M. White was the named executor in the will of the deceased and the designated trustee of the trusts established by the will with full and complete discretion in their handling.

The deceased was an equal partner with Irene Ogier in businesses designated as Ogier's of Wallace, and Ogier's of Stratton. The deceased and Irene Ogier each owned a 26 percent interest in the partnership designated as Ogier's of North Platte. Other interests were owned by the trustees of trusts in favor of Ray E. Ogier and Joanne K. Ogier established by the will of Nicholas E. Ogier, the father of the deceased. Margaret White and J. M. White were also partners to the extent of 4 percent each. The deceased and Irene Ogier each owned a 30 percent interest in Ogier's of McCook. The record does not reveal the owners of the interest in Ogier's of McCook other than that of the deceased and Irene Ogier.

The personal property involved in this litigation consists of municipal bonds of the face value of $91,000, General Motors Acceptance Corporation notes of the

face value of $275,000, and United States government bonds of the face value of $25,000.

The will was admitted to probate and J. M. White was appointed the executor of the estate. The executor proceeded immediately to inventory the assets of the estate. The executor's original inventory was filed in the county court of Lincoln County on December 12, 1960. The municipal bonds were listed as the property of the deceased. The government bonds and General Motors Acceptance Corporation notes were not listed, they evidently being included in the provision of the inventory stating that property held in joint tenancy with Irene Ogier was not included. The executor asked and was granted leave to amend his inventory by showing that the City of Cambridge bonds in the amount of $5,000 were the property of Irene Ogier and erroneously included, and that a bank account in the McDonald State Bank in the amount of $2,050.96 shown as belonging to the deceased was in fact a joint tenancy account with Irene Ogier and should not have been listed as an asset of the estate.

On or about November 23, 1960, the executor filed an inventory of assets in which he stated that from an examination of books and records he had determined that the listed property was owned by the deceased and Irene Ogier in joint tenancy at the time of the death of the deceased. Among the assets so listed as being held in joint tenancy at the time of the death of the deceased are $200,000 of General Motors Acceptance Corporation notes, $5,000 of Mutual Building and Loan Association certificates, government bonds in the amount of $32,100 which includes the $25,000 in bonds here in dispute, and $37,290.57 in bank accounts. The appellee asserts in his brief that the $75,000 in notes over and above the $200,000 of General Motors Acceptance Corporation notes were in fact joint tenancy notes owned by the deceased and Irene Ogier.

On August 22, 1962, the executor filed his petition for

the final settlement of his account in the county court of Lincoln County. On the same day the executor filed a petition in the county court of Lincoln County for a declaration and determination of ownership of the property in question in this appeal. Ray E. Ogier and Joanne K. Ogier, minors, and James E. Schneider, guardian ad litem, were made defendants in this action. On September 10, 1962, James E. Schneider, the guardian ad litem of Ray E. Ogier and Joanne K. Ogier, filed his objection denying the allegations of the petition asserting that the questioned property was held in joint tenancy and demanding that the executor account for the property described in his petition. The county court, after a hearing, held for the executor and the guardian ad litem appealed to the district court.

In the district court the parties stipulated that the case be tired on the pleadings made up in the county court. It was also stipulated that the evidence taken in the county court could be used as evidence in the district court, subject to the objection of the guardian ad litem that the evidence of Irene Ogier was incompetent under the dead man's statute, section 25-1202, R. R. S. 1943, and subject to objection as to any and all conclusions and opinions of the witnesses contained in the evidence taken in the county court. It was further stipulated that the witnesses testifying in the county court could be further examined in the district court and that additional evidence might be adduced by either party in the district court. The evidence taken in the county court was offered in evidence in the district court and additional evidence was adduced in that court. The trial court found for the executor and against the guardian ad litem. The latter has appealed to this court.

The guardian ad litem insists that Irene Ogier is an incompetent witness under the dead man's statute, section 25-1202, R. R. S. 1943. An examination of her evidence, in the light of the conclusion that we have reached, reveals that it does not tend to support a finding that

a joint tenancy was created. Her evidence was just as consistent with the establishment of a tenancy in common, if not more so, as with a joint tenancy. We do not deem it necessary, therefore, to pass upon or discuss her competency as a witness.

The executor asserts that the $275,000 in General Motors Acceptance Corporation notes were held in joint tenancy by the deceased and Irene Ogier. The situation as to $200,000 of the notes is identical, while as to the remaining $75,000 in notes the situation is somewhat different. We shall deal with them in the above order.

The evidence shows that deceased and Irene Ogier each had a 50 percent interest in the partnerships designated as Ogier's of Wallace and Ogier's of Stratton. They each had lesser but equal interests in Ogier's of North Platte and Ogier's of McCook. Distributions of profits from these partnerships were ordinarily made by a single check to the deceased for the profits distributed to deceased and Irene Ogier. These checks were deposited in bank accounts carried in North Platte and McCook. The account in the McDonald State Bank, North Platte, Nebraska, was in the name of Mr. or Mrs. Ray Ogier and was a joint tenancy account payable to either or the survivor. The account in the First National Bank of McCook, Nebraska, was an account in the name of Ray Ogier with a joint tenancy agreement attached, signed by the deceased and Irene Ogier. The account in The McCook National Bank, McCook, Nebraska, was also an account in the name of the deceased with a joint tenancy agreement attached, signed by the deceased and Irene Ogier. The account in the First National Bank, North Platte, Nebraska, appears to be a joint tenancy account carried in the name of Ray Ogier or Irene Ogier. Some of the checks written on these accounts in payment for notes of the General Motors Acceptance Corporation appear to have been written before the joint tenancies were created. We do not deem this of significance in the disposition of the case for the reason that all of such

notes were renewed, endorsed, controlled, and possessed in the same manner and under the same conditions as those purchased from the joint tenancy bank accounts.

The evidence shows the deceased as a dealer in motor vehicles was eligible to purchase short time notes from the General Motors Acceptance Corporation. On April 11, 1951, the deceased first purchased notes of the corporation in the amount of $40,000. He paid for them with three checks signed by himself, drawn on bank accounts held in joint tenancy by himself and Irene Ogier. The notes issued by the corporation were made payable to bearer and contained no evidence of ownership or special interest in any person. Upon the receipt of the notes, deceased caused the following unsigned endorsement to be typed on them: "Pay to the order of Ray or Irene Ogier." When the notes became due, deceased caused a further endorsement to be placed on them, making the notes payable to the order of General Motors Acceptance Corporation, which endorsements were signed by Ray Ogier.

The handling of the General Motors Acceptance Corporation notes is described in the evidence substantially as follows: On March 20, 1951, the deceased inquired of General Motors Acceptance Corporation about investing in the notes of the corporation. On March 23, 1951, the corporation advised the deceased of the method of handling. On April 11, 1951, deceased purchased $40,000 of the corporation notes with three checks signed by Ray Ogier as follows: A check for $14,000 drawn on the McCook National Bank, a check for $18,000 drawn on the First National Bank of North Platte, and a check for $8,000 drawn on the First National Bank of McCook. On receipt of the checks the corporation issued its notes in the amount of $40,000 payable to bearer and issued its check for interest for the term of the notes at $2\frac{1}{2}$ percent per annum. Upon receipt of the notes deceased endorsed them as hereinbefore stated and placed them in a locked box in the safe of Ogier's of North Platte.

The interest was deposited in the joint tenancy account in the McCook National Bank.

Shortly before the notes became due they were endorsed by deceased to the order of General Motors Acceptance Corporation and returned for renewal. Additional funds were enclosed from time to time for the purchase of additional notes. No notes were ever paid. The deceased requested and obtained renewal of old notes and invested in new ones until they totalled the sum of $145,000, all of which were purchased from the joint tenancy accounts in the First National Bank of McCook, the McCook National Bank, and the First National Bank of North Platte.

The evidence shows that the partnerships in McCook and North Platte, in which deceased and Irene Ogier were partners, purchased notes of General Motors Acceptance Corporation in the amount of $130,000, which were distributed to deceased and Irene Ogier as profits in lieu of money. They were purchased and handled the same way as all other notes of the corporation. They were made payable to bearer and were found in the "Green Box" in the safe of Ogier's of North Platte. Notes in the amount of $75,000 were found in the "Green Box" in an envelope marked "Irene." These notes were first inventoried as property of Irene Ogier but after further examination of the records they were found by the executor to have the same ownership status as the remainder of the notes.

The deceased retained the general control and custody of these bearer notes. When deceased was absent or ill, Irene Ogier had the keys to his desk and the boxes in the safe. She on occasion entered the box and on occasion had typed the endorsement on new notes at the direction of the deceased. J. M. White also placed the typewritten unsigned endorsements on newly received notes and placed them in the safe of Ogier's of North Platte. The evidence is clear that deceased controlled the handling of the notes, although White and

Irene Ogier did participate in their handling at his direction during his absence or illness. It is on these facts that the executor urges that the $275,000 of General Motors Acceptance Corporation notes were held in joint tenancy by Raymon and Irene Ogier at the time of the death of Raymon A. Ogier.

We point out that there is nothing in writing on the notes, or in any instrument pertaining to them, that in any manner refers to a joint tenancy or a right of survivorship. The unsigned endorsement, "Pay to the order of Ray or Irene Ogier," placed on the back of the notes by the deceased is evidence that Irene Ogier has some interest in them, but it is not sufficient to show a joint tenancy or a contractual right of survivorship. J. M. White testified that the purpose of the endorsement as told to him by the deceased was two-fold: First, to make it more difficult for a thief or wrongdoer to negotiate these bearer notes, and second, to indicate that they belonged to both the deceased and Irene Ogier.

This court has recognized common-law joint tenancies and the right to provide for survivorship in a tenancy in common by contract. Such estates may be created in real estate and in any kind of personal property that may be held in severalty. It is fundamental that in order to create a joint tenancy the purpose must be clearly expressed, otherwise the tenancy will be held to be in common. Joint tenancies are not favored in the law, and if not expressly created by statute, contract, conveyance, grant, or devise, the law presumes the existence of a tenancy in common. A joint tenancy in personal property may be created by oral agreement if it is established by a preponderance of the evidence, the quality of which is clear, satisfactory, and convincing in character. As we have indicated, there is no such evidence contained in the record before us. The foregoing principles of law have been announced by this court in numerous cases, to wit: Sanderson v. Everson, 93 Neb. 606, 141 N. W. 1025; In re Estate of Vance, 149

Neb. 220, 30 N. W. 2d 677; Buford v. Dahlke, 158 Neb. 39, 62 N. W. 2d 252; Whiteside v. Whiteside, 159 Neb. 362, 67 N. W. 2d 141.

It is fundamental that an existing estate in joint tenancy can be destroyed by an act of one joint tenant which is inconsistent with joint tenancy and such an act has the effect of destroying the right of survivorship incidental to it. The creation, as well as the continued existence, of an estate in joint tenancy under the common law, which is recognized in this state, subject to the right of the Legislature to modify the common-law rule which it has done by section 76-118, R. R. S. 1943, requires a unity of possession, a unity of interest, a unity of time, and a unity of title in all holding an interest in such estate. Any act of a joint tenant which destroys any one or more of its necessarily coexistent unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. Stuehm v. Mikulski, 139 Neb. 374, 297 N. W. 595, 137 A. L. R. 327; Anson v. Murphy, 149 Neb. 716, 32 N. W. 2d 271; Buford v. Dahlke, supra; Whiteside v. Whiteside, supra; DeForge v. Patrick, 162 Neb. 568, 76 N. W. 2d 733.

It is also the rule of this state that when there is a joint tenancy created in a bank account and one joint tenant withdraws the whole or any part thereof, and the character of the fund is thus changed, as to the funds withdrawn there has been a severance of the joint tenancy and the extinguishment of the right of survivorship. Whiteside v. Whiteside, supra; Buford v. Dahlke, supra; DeForge v. Patrick, supra.

The executor contends, however, that where one joint tenant withdraws funds held in a bank in joint tenancy, the joint interest of the depositors follows the funds withdrawn by either and negatives the idea that such withdrawals were severed from the joint tenancy for his own use and that other joint tenants may trace and be awarded that which has retained the joint ownership character. The executor relies on Crowell v. Milligan,

157 Neb. 127, 59 N. W. 2d 346, and cases therein cited, which so hold. In Rose v. Hooper, *ante* p. 645, 122 N. W. 2d 753, the case of Crowell v. Milligan, *supra,* was expressly overruled on the point in support of which it was cited in this case. This court in Rose v. Hooper, *supra,* said: "Our decision in this case does not agree with the citations of law herein quoted from Crowell v. Milligan, *supra,* if they were meant to apply to joint certificates in building and loan associations or joint bank accounts. Therefore, the case of Crowell v. Milligan, *supra,* insofar as it conflicts with this opinion, is hereby overruled." We go further and hold that it is wrong in principle and should not be applied to any joint tenancy created by statute, contract, conveyance, grant, or devise.

For the foregoing reasons we hold that the withdrawal of the joint tenancy funds by the deceased for the purchase of bearer notes of the General Motors Acceptance Corporation amounts to a severance of the joint tenancy as to the funds withdrawn and the consequent extinguishment of the right of survivorship in the notes purchased therewith.

The executor put in issue the ownership of school district, city, and village bonds in the amount of $91,000. We exclude from this discussion bonds of the City of Cambridge in the amount of $5,000 which we will discuss separately. The remaining $86,000 in municipal bonds were purchased by the deceased from joint tenancy funds in the same manner as the General Motors Acceptance Corporation notes. They were all bearer bonds. On the death of the deceased the bonds were found in a small box in the safe of Ogier's of North Platte. The safe was in the office of the deceased. The deceased, Irene Ogier, J. M. White, and a bookkeeper knew the combination to the safe. The small box had a lock and key. The key was kept in the desk drawer of the deceased, which was usually locked. White testified that deceased told him he was buying the bonds as

an investment "for my wife and myself." There is no writing of any kind indicating any intent that the bonds were to be held in joint tenancy. There is not, in fact, any oral evidence indicating any intent to create such an estate in these bonds. The executor relies, as he did in the case of the General Motors Acceptance Corporation notes, on the source of the funds used to purchase the bonds and the circumstances surrounding their possession and custody as establishing the joint tenancy. Their status is subject to the rules applied to the General Motors Acceptance Corporation notes and lead to the same result. The money withdrawn from the joint tenancy bank accounts and used for the purchase of the foregoing municipal bonds was thereby severed from the joint tenancy. The bonds were not held in joint tenancy and the right of survivorship incidental to the joint tenancy bank accounts was estinguished when the purchase money for the bonds was severed from the joint tenancy accounts.

As to the City of Cambridge bonds in the amount of $5,000, the evidence shows that Irene Ogier had a personal account in the First National Bank of North Platte. On June 20, 1958, she issued her personal check in the amount of $5,009.93 to the Wachob-Bender Corporation in payment for the City of Cambridge bonds. On June 24, 1958, the check was charged to her personal account in the First National Bank of North Platte. The evidence clearly shows that Irene Ogier was at all times the owner of the Cambridge bonds and that they should not have been listed as an asset of the estate of Raymon A. Ogier.

The ownership of five United States government bearer bonds, each in the amount of $5,000, is also involved in this appeal. On the death of the deceased, three of the bonds were found in a safety deposit box in the First National Bank, North Platte, Nebraska. The safety deposit box lease in which they were found showed Ray Ogier as renter and Irene Ogier and J. M.

White as co-renters. They were in an envelope in the safety deposit box. On the outside of the envelope were the words "Ray Ogier." It was stipulated that Irene Ogier never signed to enter this safety deposit box or that she ever did enter it. These three bonds were paid for by a check for $14,963.95 signed by Ray Ogier and paid from an account in the First National Bank, North Platte, Nebraska, designated "Mr. or Mrs. Ray Ogier (Irene)." The signature card for this account shows a joint tenancy agreement. In other words, these three bonds were purchased with joint tenancy funds.

The other two government bonds were found in a safety deposit box in the First National Bank, McCook, Nebraska. The rental agreement for this safety deposit box was signed by Irene Ogier and Ray Ogier. These two bonds were in an envelope marked "Ray and Irene Ogier." It was stipulated that Irene Ogier never signed to enter or ever did enter the deposit box in the First National Bank of McCook. The bonds were paid for by a check in the amount of $9,985.85 signed by Ray Ogier, drawn on the McCook National Bank. The check was paid from an account designated "Ray Ogier, Personal." Attached to the signature card for this account is a joint tenancy agreement signed by Ray Ogier and Irene Ogier. The evidence shows, therefore, that these two bonds were paid from joint tenancy funds.

There is no evidence, oral or written, indicating the existence of a joint tenancy ownership of these government bonds payable to bearer. As in the cases of the General Motors Acceptance Corporation notes and the municipal bonds, the executor relies upon the fact that the bonds were purchased with money from joint tenancy accounts and the circumstances surrounding their possession and control after their purchase. The same rules apply to these bonds as was hereinbefore applied to the General Motors Acceptance Corporation notes and the municipal bonds involved in this litigation. The govern-

ment bonds were not held in joint tenancy and a right of survivorship does not exist.

We think the evidence shows that the General Motors Acceptance Corporation notes in the amount of $275,000, the municipal bonds in the amount of $86,000, and the United States government bonds in the amount of $25,-000 were owned by Irene Ogier and Raymon A. Ogier at the time of the latter's death as tenants in common. This means that Irene Ogier is entitled to $193,000 thereof as her one-half of the common property and that the remaining $193,000 is a part of the residue of the estate of Raymon A. Ogier, deceased, which, under the terms of the will, becomes a part of the corpus of the trusts set up therein for the benefit of the minor children, Ray E. Ogier and Joanne K. Ogier. We hold, also, that the City of Cambridge bonds in the amount of $5,000 are the property of Irene Ogier and no part of the assets of the estate of Raymon A. Ogier, deceased.

Complaint is here made of the action of the trial court in assessing the costs of the action in the district court to the guardian ad litem. The executor relies in part on section 25-308, R. R. S. 1943, which provides: "The guardian or the next friend is liable for the costs of the action brought by him, and, when he is insolvent, the court may require security for them. Either may be a witness in an action brought by him." This section of the statutes has no application in the instant case. The present action was brought by the executor, not the guardian ad litem. The guardian ad litem as well as the minor children he was appointed to represent were made defendants in the action. The resulting costs were the result of action by the executor and not the guardian ad litem.

In view of the reversal of the judgment of the district court, we hold that the costs should be taxed against J. M. White as executor of the estate of Raymon A. Ogier, deceased. The costs of this appeal are likewise taxed to

J. M. White, executor of the estate of Raymon A. Ogier, deceased.

The guardian ad litem also complains of the failure of the trial court to allow an attorney's fee to him for services rendered in that court. The judgment of the district court provided that the guardian ad litem's fees for services rendered in the county and district courts should be first passed upon by the county court of Lincoln County. It further provided that the district court retained jurisdiction for the allowance of a guardian ad litem's fee for services rendered in the district court if subsequent application be made therefore in the district court.

The duty of a guardian ad litem toward the minors or incompetents he represents is a responsible one which has been commented on many times by this court and will not be reviewed here. If the action of a guardian ad litem is reasonable, and within the duties of a guardian ad litem in protecting the best interests of the minors or incompetents whom he was appointed to represent, he is entitled to reimbursement for expenses and to an allowance of fees for services rendered. A guardian ad litem who acts in good faith in the performance of his duty will not ordinarily be hindered by the fear that he will be charged with expenses and nonpayment for services rendered. The result obtained in this court by the guardian ad litem in the present case is proof enough of the good faith exercised in appealing the case to the district court, and then to this court. See, Boden v. Mier, 71 Neb. 191, 98 N. W. 701; Hunter v. Buchanan, 87 Neb 277, 127 N. W. 166, 29 L. R. A. N. S. 147, Ann. Cas. 1912A 1072.

The basic question posed is, in what court should the fees of the guardian ad litem be allowed. The fund out of which they are to be paid is of little concern. If chargeable to the executor they would be paid from the residuary estate which is given to the trusts set up for these minor defendants. If charged to the funds recov-

ered for the minor defendants, the end result would be the same.

The proper court from which to secure an allowance of attorney's fees for a guardian ad litem is raised by this appeal. The fees of a guardian ad litem are chargeable as costs in cases which involve minors or incompetents in litigation. It would seem, therefore, that the fees of a guardian ad litem should be taxed as costs in the court or courts in which his services were rendered. See Wood Realty Co. v. Wood, 132 Neb. 817, 273 N. W. 493. This has been the practice followed in this court from its earliest decisions. The circumstances of each case are to be considered in determining to whom the fees of a guardian ad litem are to be taxed or from what source they are to be paid. A guardian ad litem who acts reasonably and in good faith is entitled to be paid whether or not he is successful in the litigation. Copple v. Bowlin, 172 Neb. 467, 110 N. W. 2d 117. He is entitled to such compensation for such service as the court shall deem reasonable. § 7-113, R. R. S. 1943; Wood Realty Co. v. Wood, *supra;* Copple v. Bowlin, *supra.*

The district court was in error in referring to the county court for its consideration the allowance of a guardian ad litem's fee for services rendered in the district court. The allowance of such a fee is for the district court and the amount allowed should be taxed as costs in that court. On January 8, 1963, the guardian ad litem filed his application and showing in the district court for the allowance of fees, costs, and expenses in that court. Costs and other expenses amounting to $182.30 were shown. They should and hereby are taxed to the executor of the estate.

The application shows in detail the services rendered in the district court, all of which were legal in character. The matter of the allowance of the fees of the guardian ad litem for services rendered in the district court is here for review.

In determining the value of services rendered by an

attorney who has been appointed guardian ad litem the court will consider the nature of the litigation, the amount involved, the result of the suit, the length of time spent on the case, the care and diligence exhibited, and the character and standing of the attorney. Allen v. Tallon, 120 Neb. 611, 234 N. W. 411. The case was an intricate one requiring the examination of many records. It has been in the courts for more than 14 months. The legal questions involved were not simple in any sense of the word. The amount involved is $391,000. It was time consuming in its preparation and presentation to the court. We think a guardian ad litem's fee of $6,000 should have been allowed by the district court. The guardian ad litem's fee in the district court is hereby fixed at $6,000.

The guardian ad litem is also entitled to fees for services rendered in this court. The record shows that the issues in this case were tried in the county and district courts of Lincoln County, both of which resulted in adverse judgments to the guardian ad litem's contentions. The guardian ad litem perfected his appeal to this court. The case was comprehensively briefed and argued in this court. The result was a recovery of $193,000 for the two minor children whom he represented. After a consideration of all the facts before this court, we allow the guardian ad litem a fee of $4,000 for services rendered in this court.

The judgment of the trial court finding Irene Ogier to be the sole owner of the City of Cambridge bonds in the amount of $5,000 is affirmed. The judgment of the trial court holding the General Motors Acceptance Corporation notes in the amount of $275,000, the municipal bonds in the amount of $86,000, and the United States government bonds in the amount of $25,000 to be the sole property of Irene Ogier is reversed and the cause remanded with directions to enter a judgment holding such notes and bonds to have been owned by Irene Ogier and the deceased as tenants in common at the time

of the latter's death. The guardian ad litem is awarded a fee of $6,000 for services rendered in the district court and a further sum of $4,000 for services rendered in this court, payable by the executor from the residue of the estate of Raymon A. Ogier, deceased. Expenses of the guardian ad litem in the district court of $182.30 are taxed to the executor of the estate. The costs of this appeal are likewise taxed to the executor of the estate.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.