JAMES P. O'TOOLE, APPELLEE, V. KATHRYN M. YUNGHANS ET AL., APPELLANTS.

320 N.W.2d 768

Filed June 11, 1982. No. 44192.

Knudsen, Berkheimer, Beam, Richardson & Endacott, for appellants.

Dwight Griffiths, and Samuel L. Schuetz and John L. Weingart of Finley, Miller, Cashman, Schuetz & Weingart, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

This is an action by the plaintiff O'Toole, filed on September 21, 1978, against the defendants Yunghans to quiet plaintiff's claimed title to an undivided one-half interest in a 560-acre tract of land and to his claimed 100 percent interest in a 120-acre tract of land, both located in Pawnee County, Nebraska, against the claims of the defendants which are founded upon a treasurer's deed. We will hereafter refer to the tracts as the Scott place and the McNabb place, respectively. The District Court for Pawnee County found in favor of the plaintiff, declaring the treasurer's deed void and removing the cloud cast upon O'Toole's title by the recording of the deed. The defendants have appealed to this court.

Since on trial de novo we conclude that the District Court was correct, it is necessary to set forth only those facts which support the findings of the trial court and our determination here.

O'Toole and Kathryn Yunghans (Yunghans) are brother and sister, and this is another chapter in a family feud. See *Yunghans v. O'Toole,* 199 Neb. 317,

258 N.W.2d 810 (1977). O'Toole and Yunghans are owners as joint tenants of the Scott place by virtue of a warranty deed from their father dated November 6, 1958. In the case of *Yunghans v. O'Toole, supra,* we held that Yunghans was entitled to have the joint tenancy and the accompanying right of survivorship severed by partition. O'Toole is the sole record title owner to the McNabb place by virtue of a deed from his father dated May 6, 1968. Subsequent to the acquisition of the above titles, O'Toole operated or supervised the operation of both places.

Real estate taxes on both tracts were unpaid for the last half of 1970 through 1973, and on December 16, 1974, the county treasurer issued a "County Treasurer's Certificate of Tax Sale.—Public. No. 1120" to Theron G. Callam, which certificate covered both the Scott and the McNabb places. Taxes for subsequent years were not paid by the owners, and the treasurer issued five "subsequent" tax certificates to Callam for taxes for the years 1974 through the first half of 1976. On August 8, 1977, Callam assigned all of his interest in the tax sale certificates to Yunghans. Thereafter, on September 8, 1977, Yunghans paid the taxes for the last half of 1976 on both tracts and received another treasurer's tax sale certificate. On December 20, 1977, Yunghans acquired a "Treasurer's Deed," which purported to convey to her title to both tracts, and recorded the deed on the same day.

O'Toole pleaded and asserted various theories on which he claims the treasurer's deed is void. However, we need consider only the theories upon which the trial court acted. The basis for decision on the two tracts is different. As such, the facts pertaining to each tract will, insofar as practical, be stated separately. As to the Scott tract, the trial court found that acquisition of the tax certificate by Yunghans from Callam, the payment of the subsequent taxes by Yunghans, and the acquisition of the treas-

urer's tax deed amounted to a redemption by a cotenant and inured to the benefit of O'Toole; that Yunghans should be paid the sum of $7,054.06 which O'Toole had paid into court at the time of the filing of his amended petition as his share of the taxes and interest; and that he should furthermore reimburse Yunghans for any taxes she subsequently paid.

The decision of the District Court was correct. It is the general rule that "when one of several coowners of property acquires a tax title thereto founded on default in the payment of taxes which are a common burden on all, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made." *Toole v. Lawrence,* 144 Neb. 779, 787, 14 N.W.2d 607, 611 (1944). See, also, 86 C.J.S. *Tenancy in Common* § 59 (1954). The above rule is not changed by the fact that the cotenant acquires the tax title from a stranger who purchased at the tax sale. *Saffer v. Saffer,* 133 Neb. 528, 274 N.W. 479 (1937). There is nothing in the evidence in this case which removes it from the foregoing general rule.

We now recite the additional pertinent facts relative to the McNabb place. O'Toole was the sole record owner of that tract. Yunghans was, on the record, a stranger to that title. Absent some circumstances creating a legal reason otherwise, there was nothing to prevent her from acquiring title to the McNabb tract by a valid treasurer's deed.

In his fourth cause of action O'Toole alleged that he was without funds to pay the taxes on the Scott place or the McNabb place and that, in order to obtain such funds, he advertised and offered for sale on November 18, 1977, the McNabb tract; that on November 16, 1977, 2 days before the proposed auction, Yunghans filed in the District Court for Pawnee County an action in which she claimed that O'Toole

held the McNabb place in trust pursuant to an oral agreement for a family settlement. On November 16, 1977, in that action Yunghans obtained a temporary restraining order and O'Toole was prevented from selling the McNabb place. In her petition in that action Yunghans alleged: "5. At the meeting referred to in Paragraph Three, it was orally agreed between plaintiff and defendant James P. O'Toole that plaintiff's father should deed the McNabb Pasture to one of the heirs of James J. O'Toole for a small consideration, and said heir would hold record title to the property solely as nominee for the heirs of James J. O'Toole pending a settlement agreement over distribution of the Estate of James J. O'Toole which would include distribution of the McNabb Pasture. It was agreed that when this agreement was reached, defendant James J. O'Toole would convey away the McNabb Pasture in accordance with the terms thereof.

. . . .

"10. By virtue of the death of James J. O'Toole and the oral agreement previously alleged, plaintiff is entitled to and *is the beneficial owner of an undivided one-half interest in the McNabb Pasture.*" (Emphasis supplied.)

The evidence supports the conclusion that Yunghans' claim of an interest in the McNabb place was totally groundless and false, that the action was filed for the purpose of attempting to prevent O'Toole from accomplishing his purpose of acquiring funds to pay his share of the taxes, and so that she might acquire title to both tracts.

The evidence shows that O'Toole paid to his father the sum of $9,600 for the McNabb place; that the amount was the fair value of said property; that Yunghans received the $9,600 check; and that she filed the estate tax return for her father's estate and reported the $9,600 as an asset of the estate, describing it as proceeds of sale from the McNabb

tract. It further shows that she was the notary public who took her father's acknowledgment on the deed by which the tract was conveyed to O'Toole and that the deed was witnessed by a lawyer and a banker, apparently at her behest. The evidence also shows that the petition in the action in the District Court for Pawnee County in which she asserted title to the McNabb place was filed by her on November 16, 1977, the same day the mandate of this court was filed in *O'Toole v. Yunghans,* 199 Neb. 317, 258 N.W.2d 810 (1977). It likewise shows that to the time of trial in this cause now before us, she had taken no action to cause the sale of the Scott place pursuant to the decree for partition even though judgment on the mandate was entered on November 30, 1977.

The action in which Yunghans obtained the restraining order was never pursued to final judgment. The record fully supports a finding that the action was brought in bad faith for the purpose of preventing O'Toole from paying his share of taxes and as a part of her attempt to acquire title to both tracts.

As already noted, O'Toole asserted various procedural grounds on which it is claimed the treasurer's deed was void. We need not deal with those contentions, and assume that all procedures were proper. We hold that Yunghans is estopped to assert the validity of her tax title as against O'Toole. One may not acquire title to real estate by estoppel. *Roll v. Martin,* 164 Neb. 133, 82 N.W.2d 34 (1957). However, " ' "a party may estop himself after the arrangements have been fully executed from asserting that the title he by his own acts has created or aided in creating is not the true title." . . .' " *Id.* at 140, 82 N.W.2d at 39. In that case we said, quoting from *May v. City of Kearney,* 145 Neb. 475, 17 N.W.2d 448 (1945): " ' "Equitable estoppels operate as effectually as technical estoppels. They cannot in the nature of things be subjected to fixed and settled rules of universal application, like legal estop-

pels, nor hampered by the narrow confines of a technical formula. So, while the attempted definitions of such an estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances. . . ." ' " 164 Neb. at 139, 82 N.W.2d at 38. O'Toole's title in this case does not arise by estoppel, it comes by deed of purchase. Yunghans' tax title was made possible by her inequitable and unconscionable conduct in preventing O'Toole from selling the McNabb place. In any event, if the allegations of paragraph 10 of the petition, previously described, are taken as true, she was, according to her own claim, a tenant in common with O'Toole in the McNabb place and the redemption for taxes by her inured to her cotenant's benefit.

Yunghans asserts that her tax title is protected by the provisions of Neb. Rev. Stat. §§ 77-1843 and 77-1844 (Reissue 1976). These sections provide: "In all controversies and suits involving the title to real property claimed and held under and by virtue of a deed made substantially by the treasurer in the manner provided by sections 77-1831 to 77-1842, the person claiming the title adverse to the title conveyed by such deed shall be required to prove, in order to defeat the title, either (1) that the real property was not subject to taxation for the years or year named in the deed; (2) that the taxes had been paid before the sale; (3) that the property had been redeemed from the sale according to the provisions of this chapter, and that such redemption was had or made for the use and benefit of persons having the right of redemption under the laws of this state; or (4) that there had been an entire omission to list or assess the property, or to levy the taxes, or to sell

the property.'' § 77-1843. ''No person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale, and that all taxes due upon the property had been paid by such person or the persons under whom he claims title as aforesaid.'' § 77-1844.

A reading of these statutes shows that they afford Yunghans no comfort. O'Toole did prove that he had title to the property at the time of sale and he therefore had standing to challenge the tax deed under § 77-1844. There is nothing in § 77-1843 which purports to set aside the general principle that the purchase or extinguishment of an outstanding title, interest, or claim by one cotenant inures to the benefit of his cotenants.

AFFIRMED.

KRIVOSHA, C.J., concurs in the result.