HAROLD E. HANIKA, DECEASED, APPELLEE, AND NEVA M. HANIKA, APPELLANT, V. ROBERT NEAL RAWLEY, ALSO KNOWN AS ROBERT C. RAWLEY, ET AL., APPELLEES.

368 N.W.2d 32

Filed May 24, 1985.   No. 84-122.

Richard L. Halbert, for appellant.

Gerald P. Laughlin and Deborah A. MacDonald of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellees Rawley et al.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

WHITE, J.

The plaintiffs, Harold E. and Neva M. Hanika, brought this action in the district court for Richardson County, Nebraska, to quiet title to two separate 80-acre tracts. Defendants cross-petitioned to quiet title to the tracts in themselves. The trial court granted the cross-petition. This appeal follows.

Six assignments of error are urged. They are: (1) The court erred in holding that plaintiffs were equitably estopped from asserting title to the real estate by deed; (2) and (3) The judgment is contrary to law and the evidence; (4) The judgment is not sustained by sufficient evidence; (5) The court erred in admitting certain evidence; and (6) The court erred in allowing the testimony of a witness not named as a witness in a pretrial conference. We affirm.

We review the case de novo as we do in equity matters. *Egan v. Catholic Bishop*, 219 Neb. 365, 363 N.W.2d 380 (1985). Therefore, an extended recitation of the facts is necessary.

The plaintiffs are the son and daughter-in-law and the defendants, among others, are the grandson and granddaughter of Herman J. Hanika, a farmer of Richardson County who died on September 4, 1955. His will was admitted to probate on September 30, 1955. The provisions of the will with respect to the subject real estate are:

> SECOND, I give and devise to my grandson, Robert Neal Rawley
> The East Half (E$\frac{1}{2}$) of the Northeast Quarter (NE$\frac{1}{4}$) of Section Nine (9), Township Three North, Range 16, East of the 6th P. M. in Richardson County, Nebraska, except that my son, Harold E. Hanika shall have the use

and income from said real estate during his life time.

THIRD, I give and devise to my granddaughter Rita Mae Neville the following real estate:

The North Half ($N\frac{1}{2}$) of the Southwest Quarter ($SW\frac{1}{4}$) of Section Three (3) in Township Three (3), North, Range 16 East of the 6th P. M. in Richardson County, Nebraska,

except that my son, Harold E. Hanika shall have the use and income from said real estate during his life time.

The estate was duly administered and a final decree entered repeating the terms of the devise, i.e., a life estate to plaintiff Harold and a remainder in fee to defendants Robert Rawley and Rita Mae Neville. Harold did not dispute the will, nor did he assert any interest in the real estate different from that mentioned in the will.

The record reveals evidence that the first marriage of Harold ended in divorce and, though disputed, that a rift developed between Harold and his father, Herman, on the one hand, and between Harold and his children on the other, and that Herman did not wish to have any property other than a modest bequest to descend to Harold's children.

On June 23, 1955, Herman Hanika executed the following documents: an oil and gas lease to an R.L. Ferguson, covering the subject property, and an affidavit of possession of the same tracts. Both documents were acknowledged or sworn to in the presence of a notary public.

The third document executed on June 23, 1955, bearing the alleged signature of Herman Hanika, is a purported warranty deed and, though it bears the signatures of witnesses, does not bear an acknowledgment. The signature of Herman on the first two documents was on the line appropriate for the signature, while the signature on the deed was less orderly, the name "Herman" being written through the first line for signature, and below, on the next line, appearing the name "J. Hanika."

The deed was taken from a safety-deposit box at a time unknown to Neva Hanika, Harold's widow. Subsequently, it was filed for record on July 21, 1982. Harold, who died prior to the trial of the case, had not disclosed its existence to anyone, including his widow. Attached to the deed was the certificate of

a notary public, certifying to the execution of the deed by the grantor and the now deceased witnesses pursuant to Neb. Rev. Stat. § 76-231 (Reissue 1981). The evidence as to the genuineness of Herman's signature was provided by the plaintiffs, Harold and Neva, and by the notary's comparison of the signature of Herman on his will. Defendants question whether the deed should have been admitted in evidence, as the "proof was taken upon the oath of an interested . . . witness" and therefore not admissible. Neb. Rev. Stat. § 76-235 (Reissue 1981). That issue was not decided by the trial court and will not be considered by us as it is unnecessary to our resolution of the dispute.

Defendants also question the genuineness of Herman's signature and whether the signing witnesses actually saw Herman sign, but, again, as the trial court did not decide the issue, we shall not do so.

In disposing of the assignments of error we shall consider assignment (5) first. We merely note that in a trial de novo, " 'evidence which should not have been admitted by the trial court will be disregarded by this court in arriving at its decision. . . .' " *In re Interest of Aufenkamp*, 214 Neb. 297, 300, 333 N.W.2d 681, 684 (1983).

As to assignment (6), the record reveals that a week prior to trial, the intention of defendants' counsel to call the witness was made known to plaintiffs' counsel, and no objection was made to defendants' counsel. We will not permit a technical violation of a local court rule which has been waived by opposing counsel to be raised in this court. The law is practiced by honorable persons, and among persons of honor, one's word is one's bond. No more need be said on this subject. The assigned error is without merit.

As assignments (1) through (4) are interrelated, we shall consider them together.

For a period in excess of 27 years, Harold Hanika was in secret possession of an instrument that, if valid, would defeat the title of the defendants Rawley and Neville. Though bitterly opposed to the disposition of property made by his father's will, he allowed the estate proceeding to be completed. The existence of the deed was not disclosed during the lifetimes of the alleged

subscribing witnesses. The defendants, to the extent that remaindermen can do so during the life of the life tenant, exercised their rights of ownership, i.e., procured liability insurance and listed remainder interests on required property statements for bank loan purposes.

The essential question is whether this secret possession of the alleged deed is of such a character that the assertion of title derived thereunder is prohibited by the equitable principles of estoppel. While estoppel may not be used to create a title to real estate, the doctrine may be used in defense of title. *O'Toole v. Yunghans*, 211 Neb. 852, 320 N.W.2d 768 (1982). The title of defendants was created by the will of Herman J. Hanika.

In *Rihner v. Jacobs*, 79 Neb. 742, 749, 113 N.W. 220, 223 (1907), the court describes its understanding of the doctrine of equitable estoppel.

> There is a theory approved and adopted by the courts of some states which makes the very essence of equitable estoppel to consist of fraud, and affirms that an actual fraudulent intention to deceive or mislead is a necessary requisite in the conduct of the party in order that it may create an equitable estoppel. *Boggs v. Merced Mining Co.*, 14 Cal. 279; *Martin v. Zellerbach*, 38 Cal. 300. In a general discussion of the principles, elements, operation and effect of equitable estoppel, Mr. Pomeroy comes to the conclusion that such fraud is not a necessary element, except as the word fraud is used as synonymous with "unconscientious" or "inequitable," and that it is accurate to describe equitable estoppel in general terms as such conduct by a party that it would be fraudulent or a fraud upon the rights of another for him afterwards to repudiate and to set up claims inconsistent with it. 2 Pomeroy, Equity Jurisprudence (3d ed.), sec. 803.

The withholding of the alleged deed until after the death of the grantor and the subscribing witnesses obviously afforded to the plaintiffs a distinct advantage and a distinct disadvantage to the defendants, to wit, the lack of opportunity to explore firsthand the genuineness of the signatures on the deed and the validity of its execution. "Although a person is not bound under all circumstances to speak out, but where his silence

enables him to acquire unfair advantage over another in the settlement of property rights, it is his duty to speak. Guilty silence may work an estoppel as effectually as an express representation." 5 G. Thompson, Commentaries on the Modern Law of Real Property § 2525 at 555 (repl. 1979).

In this circumstance the assertion of the stale deed is barred by elementary equitable principles of fairness, and probably, though not advanced by counsel, by the doctrine of laches.

As to the remaining assignments, the evidence convinces us on de novo review that the trial court was correct in its decision and that the evidence would justify a court in refusing to direct a verdict when the conclusion sought would be one of fact for the jury. The judgment in this equitable action is supported by sufficient evidence. *Weiner v. State ex rel. Real Estate Comm.*, 214 Neb. 404, 333 N.W.2d 915 (1983).

The decision of the trial court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority in this case. I write separately, however, because I fear that the majority opinion may be read to say more than the opinion intends. In particular, I am concerned about the broad statement to the effect that "[a]lthough a person is not bound under all circumstances to speak out, but where his silence enables him to acquire unfair advantage over another in the settlement of property rights, it is his duty to speak." I believe that this is too broad a statement of the law. It is this "silence" which often entitles one to acquire an interest in land by adverse possession. An individual who owes no duty to others is not required to disclose that he or she holds title to any property, regardless of what advantage that silence may accrue to the lawful owner of the property.

What defeats the plaintiffs' title in this case is not the fact that Harold Hanika remained silent as to the fact that he held title to the land in question but, rather, that he took positive steps, inconsistent with that title, to the detriment of others. He participated in the estate proceedings, at least to the extent of requesting a determination of inheritance tax in a manner contrary to what he knew to be the truth. Moreover, he knew

that the estate was being administered, having received notice of that fact, and yet he permitted the court to make a finding to the effect that he held only a life estate in the property, when he knew that not to be the fact of the matter. It is not his silence with regard to the deed which precludes him from claiming title to the land; rather, it is his action in participating in proceedings or his failure to object to the proceedings when he knew that the findings were not correct. Where, as here, the signature on the deed is accepted as valid, holding that "silence" precludes the holder of title lawfully conveyed to retain title is not, in my view, correct. I would have affirmed on the basis of Hanika's active participation in this matter and not on the basis of silence.