In the Matter of Marvin W. DAVISON and Betty S. Davison, d/b/a Davison Enterprises and Subsidiaries, Debtors.

**CITIZENS STATE BANK OF NEVADA, MISSOURI, Appellant,**

v.

**Marvin W. DAVISON and Betty S. Davison, d/b/a Davison Enterprises and Subsidiaries, Appellees.**

No. 85–0128–CV–W–5.

United States District Court, W.D. Missouri, W.D.

Oct. 25, 1985.

Lynn Ewing, III, Nevada, Mo., for appellant.

Stephen Stiller, Kansas City, Mo., for appellees.

### ORDER

SCOTT O. WRIGHT, Chief Judge.

This action is an appeal by Citizens State Bank of Nevada, Missouri, from a final judgment, order and decree of the Honorable Frank P. Barker, Judge, United States Bankruptcy Court for the Western District of Missouri. *See* 28 U.S.C. § 158 (1984). Marvin and Betty Davison, husband and wife petitioners for relief under Chapter 11 of the Bankruptcy Reform Act, sought a determination in the Bankruptcy Court that Citizen's State Bank of Nevada, Missouri

(Bank) was an unsecured creditor. After an evidentiary hearing, the Bankruptcy Court determined that the Bank had failed to perfect its security interest because Betty Davison had not signed the financing statement covering the collateral. The Bankruptcy Court concluded that Betty Davison was required to sign the financing statement because she and Marvin both owned the inventory. The District Court affirmed. In so concluding, however, the Bankruptcy Court applied the presumption under Missouri law that married persons hold jointly-owned personal property as tenants by the entirety. The United States Court of Appeals for the Eighth Circuit reversed and remanded, however, noting that before property can be held in tenancy by the entirety, two persons who are husband and wife must actually be [joint] owners of the property. *In re Davison*, 738 F.2d 931, 936 (8th Cir.1984). Thus, the Court of Appeals concluded that unless Betty Davison had an ownership interest in the inventory, she was not a debtor whose signature was required on the financing statement for the Bank to perfect its interest. 738 F.2d at 935–936. Because the Bankruptcy Court had [erroneously] relied on a presumption rather than evidence presented at the hearing, the action was remanded to determine whether Betty held an actual ownership interest in the inventory; a necessary precondition to the determination of the nature of that interest. *Id.*

On remand, the Bankruptcy Court found that Betty did have an ownership interest in the inventory. This finding was based on the Davisons' testimony that in 1961 they had a "meeting of the minds" that they owned the assets of Davison Enterprises as husband and wife. Betty testified that she actually participated in managing the store, and had indeed signed the notes and security agreements in question, albeit as "his wife." A Dun & Bradstreet credit report, however, stated ownership in husband and wife.

The Bankruptcy Court went on to declare testimony by Bank officers that they had

always dealt solely with Marvin Davison as incredible, given their self-interest in the outcome.[1] The Bankruptcy Court also noted that in practical terms "tens of thousands of husbands and wives start up a business every year ... and as far as they are concerned they own the business and its assets together," regardless of whether or not the law considers them partners.

## Standard of Review

 Findings of fact made in the Bankruptcy Court may not be set aside in this Court unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made. *First National Bank of Clinton v. Julian*, 383 F.2d 329 (8th Cir.1967). The correctness of ultimate conclusions of law, however, must be independently determined by this Court, and conclusions of law must be overturned if they are erroneous rather than clearly erroneous.

1. While credibility findings are properly made by the Bankruptcy Judge, the Bankruptcy Court made no mention of the obvious self-interest the debtors have in a result adverse to the Bank. If the Bank is determined to be a secured creditor, they obviously are entitled to the collateral in satisfaction of the $640,000 debt. If, however, it is determined that the Bank is merely an unsecured creditor, the inventory underlying this dispute can be used by Appellees to obtain additional financing pursuant to their Chapter 11 reorganization.

2. The Court, although a relatively recent stop on the Davisons' journey through the Bankruptcy process, professes some doubt as to the validity, *ab initio,* of the basis of the Bankruptcy Court's original decision, filed in June of 1983. The financing statement underlying this action lists "Davison's Shoes" as the "debtor" and is signed by Marvin W. Davison. The question that arises upon the determination that Betty Davison is an owner of the collateral, and therefore a "debtor" under the Code, *see* Mo.Rev.Stat. § 400.9–105(d), is whether the signature of one of two debtors is sufficient to perfect the claimed security interest. Where a [trade] name contained on a financing statement is only slightly different than the debtor's real name, perfection has been upheld because parties searching the record would be put on notice by such an entry. In this case, a search of the index under "Davison" would have revealed the existence of a

## Opinion

At the outset, the Court notes that Davison Enterprises was a for-profit business operating a number of retail shoe outlets in Missouri. The loans underlying this dispute were business loans secured by inventory sold in the course of App̲ ̲llees' business. Neither party suggests the business is held in corporate form. Marvin Davison, therefore, is either the sole proprietor of Davison Enterprises, or he and his wife are necessarily partners in the business.

If Marvin Davison is determined to be a sole-proprietor, then his wife has no ownership interest in the inventory, and her signature would not be required in order to perfect Appellant's security interest. If, however, it is determined that Davison and his wife are partners, her ownership interest in the inventory may indeed require her signature—in some manner—on the financing statement in order for Appellant to perfect their security interest.[2]

 With some reluctance,[3] the Court does not find the Bankruptcy Court's determination that Betty Davison did indeed

security interest. Thus, it seems to this Court that the omission of Betty's signature as a defeat to Appellant's perfection is an elevation of form over substance not contemplated by the framers of the UCC. *Cf. In re Leichter,* 471 F.2d 785, 787 (2nd Cir.1972). Betty Davison testified that she was aware of the loans made, she knew the proceeds were to be used in the shoe business and that she had knowledge of, yet no objection to, the granting of the security interest in the inventory. For *Betty Davison* to challenge the validity of Appellant's perfection on the grounds that *she* didn't sign the financing statement completely ignores the purpose of the Article Nine filing and notice scheme.

3. There was evidence presented that would have supported a finding that Marvin Davison was indeed a sole proprietor. Most, if not all, of the promissory notes and security agreements involved were signed "Marvin W. Davison, d/b/a Davison Enterprises, a sole proprietorship." Betty Davison's signatures appear on each as "Betty S. Davison, his wife." Financial statements do not list assets or liabilities of Betty. Moreover, unlike the partnership that previously operated Davison Enterprises (of which Marvin was a member), no written partnership agreement exists, nor were partnership tax returns filed.

have an ownership interest in the inventory to be clearly erroneous. The Bankruptcy Court relied on the Davisons' testimony that they had decided in 1961 to own and operate the shoe business as husband and wife. Furthermore, there was evidence that Betty was actively involved in the business, making joint decisions with Marvin, decorating the 50–plus stores, purchasing inventory, training employees, writing manuals, making speeches and attending seminars. Betty's signature did appear on the notes, and the Bankruptcy Court noted that Dun & Bradstreet credit reports showed joint ownership of the business. Signature cards of their various bank accounts indicated the same. Appellees also point to Appellant's indexing of their file under "Davison, Marvin W. and Betty S. d/b/a Davison Enterprises," as further support for their assertions that Betty had an ownership interest in the business.

■ A partnership is an association of two or more persons to carry on as co-owners of a business for profit. Mo.Rev.Stat. § 358.060.1. The primary consideration in determining the existence of a partnership is whether the parties intended to carry on as co-owners of a business for profit. *See Stuart v. Overland Medical Center*, 510 S.W.2d 494 (Mo.App.1974). Although the Court understands that, under Missouri law generally, property acquired jointly by a husband and wife is presumed to be held in tenancy by the entireties, the for-profit business nature of this enterprise removes Appellees' relationship to this inventory from the operation of that presumption. To be sure, a partnership relationship does not necessarily arise by reason of a wife working in her husband's place of business, particularly if she works merely to "help out." *See Shawneetown Feed & Seed Co. v. R.N. Ford*, 468 S.W.2d 54, 56 (Mo.App. 1971): *Cf. Miller v. Miller*, 277 S.W. 922 (Mo. banc 1925). However, Appellees' own testimony and proof clearly establishes that Betty did more than merely "help out" and that a partnership relationship exists between them.

The difference between tenancy by the entirety and a partnership conducted by a husband and wife is that a partnership involves, in addition to [mere] ownership of property, the element of adventure—that is, carrying on a business for profit. *Wood v. Claussen*, 207 S.W.2d 802, 814 (Mo.App. 1948). Appellees insisted, and the Bankruptcy Court found, that Marvin and Betty had a community of interest in the performance of a common purpose—i.e. the shoe business. They had a joint proprietary interest, mutual right of control, and shared in the profits and/or losses as evidenced by the fact Betty received a draw rather than wages. Betty and Marvin were neither co-proprietors (a theory advanced by the Bankruptcy Court, however, a business entity heretofore unknown to this Court) nor merely tenants by the entirety of personal or real property acquired during their marriage. By their own admission, they jointly owned and operated a for-profit business enterprise; they were, therefore, partners. As a partner, Betty Davison indeed possessed an ownership interest in the inventory underlying this dispute.

■ Accepting Appellees' assertions that they are indeed partners manifests the apparent "Catch–22" of their position. While agency by a husband for his wife may not be established or inferred merely by reason of the marriage, *see Link v. Cox*, 529 S.W.2d 189 (Mo.App.1975), every partner is an agent of the partnership for the purposes of its business and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way of business of the partnership binds the partnership. Mo.Rev.Stat. § 358.090.1. Thus, Marvin certainly has statutory power to act as agent on Betty's behalf.

Furthermore, the Davisons concede a "division of functions" whereby Marvin negotiated and directed all financial matters. Betty meanwhile dealt with matters pertaining to the decoration of the stores. In undertaking to handle all financial matters for the business, Marvin Davison cannot seriously claim to have lacked Betty Davison's consent to act on her behalf. The relationship between Appellant and debtors

742

has been a continuing one, spanning almost twenty years. Testimony that Betty Davison never dealt with the Bank or negotiated financial arrangements was uncontroverted. Moreover, Marvin's repeated dealings with the Bank and decision-making authority,—on behalf of Davison shoes,—is at the least indicative of the apparent authority he possessed to act on Betty's behalf. In allowing Marvin to repeatedly and continually negotiate with the Bank, Betty placed him in such a situation that a person of ordinary prudence would have been justified in presuming that Marvin had authority to act on her behalf, thus estopping her from denying his [apparent] authority. *Cf. S.S. Silberblatt, Inc. v. Seaboard Surety Co.,* 417 F.2d 1043 (8th Cir.1969). The presence of Betty Davison's signature on the individual notes is explained easily enough in that the *Bank* required it, rather than Betty Davison. The Court notes that this is a rather standard banking practice when loans are made to married person(s).

Moreover, Betty Davison's non-participation in the financial affairs of Davison Enterprises, whether due to lack of interest, division of functions or otherwise, is persuasive evidence that in her acquiescence to Marvin's dealings with the Bank she represented him to possess the actual authority to act on her behalf. As recognized by Mo.Rev.Stat. § 358.090.1—and dictated by common sense—a partner generally does, and indeed must, have the authority to act as an agent on behalf of the partnership. Regardless of where the input into financial decisions emanated from, it remains clear that Marvin continually, and solely, dealt with the Bank.

In conclusion, even assuming Betty Davison indeed does have an ownership interest in the inventory, Marvin's authority to act on her behalf and his signature on the financing statement underlying this action is sufficient to render Appellant's security interest properly perfected.

Accordingly, it is hereby

ORDERED that the decision of the Bankruptcy Court is reversed.