**In the Matter of Harold SCHULZ, Debtor.**

**FARMERS AND MERCHANTS NATIONAL BANK, WEST POINT, NEBRASKA, Plaintiff,**

v.

**Harold D. SCHULZ and Marilyn Schulz, Defendants.**

Bankruptcy No. 85–980.
Adv. Nos. 85–195, 85–112.

United States Bankruptcy Court,
D. Nebraska.

April 1, 1986.

John Guthery, Lincoln, Neb., for the Bank.

C.G. Wallace, III, Omaha, Neb., for debtor.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

These two adversary proceedings were combined for trial and evidence was heard on February 13, 1986. Case No. A85–195 is a complaint by the Bank objecting to the discharge of the debtor under Bankruptcy Code § 727. Case A85–112 is a complaint by the Bank against the debtor and his wife, a non-debtor, for a determination of the extent and validity of a security interest. Appearing on behalf of the Bank was John Guthery of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., Lincoln, Nebraska. Appearing on behalf of the debtor and, apparently on behalf of the wife of the debtor, was C.G. Wallace, III, of Thompson, Crounse, Pieper and Quinn, Omaha, Nebraska.

### Findings of Fact

The debtor is a farmer who, prior to bankruptcy, operated a farming operation and a dairy herd. Debtor filed a Chapter 11 petition on May 1, 1985. He has operated as a debtor-in-possession since that time.

Debtor's wife of 30 years has participated with him in the operation of the farm and the dairy herd throughout the years.

The debtor and his wife own all of their titled real and personal property as joint tenants with rights of survivorship.

Throughout the years, the debtor borrowed money from the Bank, provided financial information on financial statement forms, signed promissory notes, signed at least two security agreements and at least one financing statement. His wife did not sign any of the debt or security instruments.

The financial statements provided to the Bank indicated that the assets and the liabilities were owned by the debtor. However, the Bank realized that the real estate listed on the financial statement was actually owned in some type of joint or common ownership between the debtor and the debtor's wife.

The Bank loaned money to the debtor based upon the information provided in the financial statements. Specifically, the Bank made a determination on a annual basis that if liquidation of the debtor became necessary, the personal property assets listed on the financial statement as owned by the debtor would be sufficient or nearly sufficient to satisfy the debtor's obligations to the Bank.

The debtor and his wife communicated freely with one another concerning the need to borrow money from the Bank, the need to grant a security interest in the assets and the fact that money was borrowed and that assets were pledged to secure the debts. Mrs. Schulz was shown the various promissory notes, was shown the financing statement and security agreement and was shown the financial statements which were signed by Mr. Schulz.

The proceeds of the loans from the Bank were used for the benefit of Mr. and Mrs. Schulz in the farming operation.

Mrs. Schulz consented to the granting of the security interest in the farm assets.

Prior to bankruptcy the Bank did not inquire of Mrs. Schulz whether or not she had an ownership interest in the non-titled assets. The Bank relied totally upon the financial statements provided by Mr. Schulz and upon some theory that the Bank officers had that the male operator of the farm was the actual owner of all of the assets.

The debtor, and not his wife, signed numerous contracts, leases and government documents on behalf of the farm operation. He, and not she, had an ownership interest in certain companies which farrowed pigs. Such ownership interest gave him, and not her, the right to purchase a certain number of pigs per year.

After the bankruptcy petition was filed, Mr. Schulz, as debtor-in-possession, segregated the proceeds of the sale of livestock and grain and equipment. He and his wife apparently decided that she had always had a one-half ownership interest in all of the farm assets and, therefore, the proceeds

from the sale of those assets should be divided one-half for her and one-half for him as debtor-in-possession. Based upon that division, she received certain proceeds from the sale of assets in which the Bank claims a security interest and she has spent those proceeds.

Prior to bankruptcy, the Debtor held an interest in a bank account at a bank other than the plaintiff. He failed to list that bank account on his bankruptcy schedules. The plaintiff, through investigation, discovered the existence of the bank account and his interest in it and further discovered that approximately $6,000 was deposited in the account on the day the bankruptcy was filed.

### Issues

1. Does Mrs. Schulz have an ownership interest in the non-titled personal property?

2. Did Mrs. Schulz grant the Bank a security interest in the non-titled personal property or did she authorize the debtor to grant such a security interest?

3. Does the Bank have a valid security interest in the non-titled personal property?

4. Has the debtor-in-possession violated the Bankruptcy Code by failure to list assets on his schedules and by transferring assets of the estate, not in the ordinary course of business and without court approval?

5. Does a debtor-in-possession have a duty to obtain court approval before transferring assets or permitting the division of assets in which another party claims an ownership interest, but which the debtor knows or should know such interest is or will be disputed by a creditor?

### Decision

1. *Issues 1 and 2*: The non-debtor spouse does not have an ownership interest in the non-titled personal property. However, if, under a Nebraska law, it can somehow be construed that she does have such an ownership interest, she specifically authorized her husband to act as her agent to grant a security interest in her property

and she is estopped from claiming that the Bank's security interest fails as to her interest in the assets.

2. *Issue 3*: The Bank does have a valid security interest in the non-titled assets.

3. *Issue 4*: The debtor's activities, although arguably a violation of the Code, do not rise to such a level of odiousness that his discharge should be denied.

4. *Issue 5*: Debtor-in-possession and his counsel have a duty to obtain court authority prior to segregating assets and putting them beyond the reach of creditors when a non-debtor claims an ownership interest which the debtor-in-possession knows or should know will be challenged by a creditor.

### Discussion and Conclusions of Law

#### A. Ownership Interest of Spouse

In Nebraska there must be an express agreement between the husband and wife providing for the wife to acquire an ownership interest in the husband's property in return for her services. *In re Estate of Carman*, 213 Neb. 98, 327 N.W.2d 611 (1982).

In the absence of an express agreement, the wife involved in the farming operation is not entitled to a one-half interest in the property. *Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952).

An ownership interest in property used in the farming operation must be established by a preponderance of the evidence, the quality of which is clear, satisfactory and convincing in nature. *In re Whiteside's Estate*, 159 Neb. 362 at 368, 67 N.W.2d 141 (1954). See also *In the Matter of Selden*, 58 B.R. 667.

From the evidence presented, the Court is convinced that there was no express agreement that Mrs. Schulz would have an ownership interest in the untitled personal property. In addition, the facts are clear that Mr. Schulz entered into many different contractual arrangements on behalf of the farming operation without her signature and one or more of those contrac-

tual arrangements affected the property which she now claims is her own. Therefore, there is no basis for her claim, under Nebraska law.

However, assuming for the purposes of argument that she does have some type of ownership interest in the non-titled assets, her interest was encumbered by the debtor's granting of a security interest. In order for a security interest to attach, § 9–203 Neb. U.C.C. (Reissue 1980) requires that the debtor have "rights" in the collateral. The Code makes it clear that the debtor may acquire such rights in the collateral upon the authorization of the actual owner. See § 9–112, Neb. U.C.C. (Reissue 1980). The court in *Val-U Construction Company v. Contractors, Inc.*, 213 Neb. 291, 328 N.W.2d 774 (1983), stated that:

> "The Code recognizes that a debtor who does not own the collateral may nonetheless use the collateral for security thereby acquiring rights in the collateral when authorized to do so by the actual owner of the collateral."

See also *Clay v. Greenwood*, 35 Neb. 736 (1982).

▌A debtor acquiring such rights in collateral may encumber the entire property, notwithstanding the actual owner's failure to sign on the note or security agreement. Where such authorization is given, the owner becomes a guarantor or surety by operation of law to the extent of the secured property and, as such, is not subject to the requirements of the statute of frauds that he execute a writing promising to answer for the debt of another. See *Mauch v. First National Bank of Prague*, 4 U.C.C.Rep. 831 (Okla.1967); 37 C.J.S. Statute of Frauds, § 229.

In addition, the debtor could be construed as being an agent of his spouse. As the Nebraska Supreme Court stated in *Buffalo County v. Richards*, 212 Neb. 826 at 829, 326 N.W.2d 179, (1982):

> "Agency will not be presumed from the marital relation; but the fact that the wife has such knowledge of husband's activity on her property, in the light of

other evidence, may be of strong corroborative value. Owing to the close relationship existing between husband and wife, an agency by the husband may be created by slight circumstances. It is unnecessary that they enter into any formal contract of agency, nor is it necessary that the wife expressly state to her husband that she gives him authority to act. Such an agency may be inferred from the things said and acts done."

Other courts have similarly held that a wife involved in the debtor's farming operation may authorize her husband to encumber personal property that she may hold an interest in. In the case of *In re Kinney*, 16 B.R. 664 (D.Mo.1981), the wife of the debtor contended that she owned a one-half interest in a tractor that the husband granted as security for a loan. The court held that the wife had authorized her husband to encumber the property by acquiescing to her husband's control of the farming operation. The court explained that the husband's "signature on the security agreement and the financing statement, on his own behalf and as the agent for his wife, is sufficient to validate these documents. The security interest must, therefore, be concluded to be valid and perfected". *Id.* at 665.

▌In this case, Mr. Schulz testified that his wife authorized him to grant a security interest in the property. Mrs. Schulz by way of deposition testimony admitted at trial, admitted that she knew he was going to grant a security interest in the assets and she authorized him to do so.

After all of these years of accepting the fact that her husband was borrowing money and pledging as security for those loans all of the assets of the farms, Mrs. Schulz is estopped from claiming an ownership interest or any type of interest that would invalidate the Bank's claimed security interest. See *Circle 76 Fertilizer, Inc., v. Nelsen*, 219 Neb. 661, 665; 365 N.W.2d 460, 464 (1985). See all *Hanika v. Rawley*, 220 Neb. 45, 50; 368 N.W.2d 32, 35 (1985).

In *Clements v. Doak,* 140 Neb. 265, 299 N.W. 505 (1941), the debtor's wife concealed her claimed ownership interest in real estate from a mortgagee. The court held that she was thereafter estopped from asserting an ownership interest in the property:

"If she did not then intend that the mortgagee should believe that her husband was the title owner, it was her duty to speak. By her silence she would be estopped in any action by the mortgagee from asserting that the title was not in her husband. A married woman who permits her husband to mortgage her property or permits her property to remain in the name of her husband is estopped to claim that her husband is not the owner." (Citations omitted.) *Id.* at 269 [299 N.W. 505].

### B. Validity of Security Interest

 The evidence in this case is that Mrs. Schulz acquiesced in the granting of a security interest with full knowledge that all of the assets were going to be pledged to the Bank as security for the loans. She cannot now be permitted to take a position adverse to the Bank's interest.

The debtor signed a security agreement in 1968 and another one in 1978. The Bank filed a financing statement in 1978 which was continued by the appropriate filing in 1983. The security agreement signed in 1968, Exhibit 39, has never been revoked. It grants to the Bank a security interest in all farm products including but not limited to livestock, crops and supplies used or produced in farming and feeding operations; and all equipment, contract rights and accounts; including but not limited to specified items. The security agreement also covers all increase, additions, accessions and substitutions thereto or therefor. It further grants a security interest in all similar property owned by the debtor during the time the obligations are outstanding although such property may be acquired or be natural increase after the date of the security agreement. It further covers product and proceeds of collateral. The

security agreement executed in 1978, Exhibit 2, grants a security interest in and to specific goods, including cattle, hogs, corn, beans, hay and silage. In addition, it grants a security interest in all similar collateral acquired after the date of the security agreement; all replacements of collateral; all accessories, parts and equipment then or later affixed to any collateral or used in connection therewith; if livestock, all natural increase thereof and all grain, hay and other feeds owned by the borrower and all equipment used in feeding and handling livestock and in the proceeds of all of the collateral.

The debtor testified that all of the equipment on the farm is used in working with the livestock. The equipment is, therefore, encumbered by the security instrument and it is a perfected security interest. Similarly, all of the grain as product and all of the proceeds of the sale of such product are covered by a validly perfected security interest.

The security interest is validly perfected because the financing statement which was filed in November of 1978 covers all farm products including but not limited to livestock, crops, equipment and supplies used or produced in farming and feeding operations; and all contract rights and accounts then owned or afterwards acquired. It also covers proceeds and products of the collateral. The financing statement as properly filed and continued, perfects the interest previously granted in 1968 and 1978.

### C. Dischargeability of Debt

 Although the debtor failed to list a certain bank account on the bankruptcy schedules, this Court accepts his explanation given at trial that he simply forgot that his name was on that account. Such explanation is consistent with the other testimony concerning other accounts set up in the name of his wife and operated as her accounts.

 The debtor did transfer assets which, by this opinion, have been determined are his assets, rather than assets in

which Mrs. Schulz has an ownership interest. However, from the evidence, it appears that the segregation of the assets was done in good faith with a belief, probably fostered by consultation with legal counsel, that Mrs. Schulz had a valid ownership interest in the collateral. Therefore, although segregation of the proceeds from the sale of the assets and the use of those proceeds has probably harmed the creditor, this Court shall not find that the debt is nondischargeable. The case is close, however. The debtor as debtor-in-possession has some of the rights and duties of a trustee. 11 U.S.C. § 1107.

### D. Duty of Debtor in Possession and Counsel

This case is another example of creative lawyering. One spouse has filed bankruptcy and is represented by legal counsel. The other spouse has not filed bankruptcy, but claims an ownership interest in property in which a creditor also claims a security interest. Without permission of the Court the debtor-in-possession has permitted the non-debtor spouse to take possession of assets in which a creditor claims a security interest, sell or dispose of those assets and dispose of the proceeds therefrom. The Bankruptcy Code does not permit a debtor-in-possession to give up a claim to assets in which the debtor-in-possession knows, or should know, that a creditor will claim are assets of the estate. The debtor-in-possession and counsel have a duty, if a situation such as the one in this case arises, to bring an action to determine the validity of these claimed security interests or to determine the ownership of the property. The debtor-in-possession and counsel have no right to make an independent determination that the creditor's claimed security interest is invalid as to certain of the property or as to the alleged interest of a non-debtor. Under the appropriate circumstances, this Court may find that the actions or the acquiescence by the debtor-in-possession and counsel are grounds for the appointment of a trustee or for dismissal of the case. Similarly, the Court may, in the future, find

that any advice provided by counsel to debtor-in-possession which led debtor-in-possession to acquiesce in the claim of a non-party as to ownership of the property, is advice that shall not be compensated. Finally, counsel are absolutely prohibited from representing a debtor-in-possession and a non-debtor who claimed an ownership interest in the property. Any such activity in the future by counsel in this case or any other case may result in sanctions. See *In re Patterson*, 53 B.R. 366 (N.B.1985).

Separate journal entry to follow.