**In re James Ralph SEARCY & Betty Louann Searcy, Debtors.**

**Bankruptcy No. 83–02656–S–2–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

June 23, 1987.

---

James L. Bowles, Springfield, Mo., for Bank of Lockwood.

Danny R. Nelson, Springfield, Mo., for debtors.

William A. Wear, Springfield, Mo., trustee.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

These debtors filed in 1983 a Chapter 11 Reorganization of their farming operation, never were able to obtain confirmation of a plan of reorganization, and were finally liquidated under a confirmed plan filed by the creditors. Now the final chapter is reached in hearings on debtors' claims for exemptions and on one creditor's claim for secured status in certain personalty, two issues that although independent of each other nevertheless are somewhat intertwined since they concern the same property and probably impinge thereby on one another.

## BACKGROUND

Debtors had been married for over thirty-five years and had always farmed. Like so many farm couples, the husband did the farming and the wife kept the house and raised the children. However, without contradiction the debtors' testimony established that the wife in this case "helped out" her husband in the farming operation, drove trucks for him and pitched in wherever she was needed. Debtors did their banking business, inter alia, with the Farmers Bank of Lockwood. On or about October 31, 1979, both debtors signed a "Guaranty" agreement with said bank, cross guaranteeing any debts of the other. There are two significant factors in that agreement. First, the agreement speaks only of debt payment and is silent as to any collateral or security for such payment. Second, the "Guaranty" specifically states that it is "Unsecured" rather than the other possibility of being "Secured" by a described security interest. On December 11, 1981, debtor James R. Searcy signed a promissory note for $63,931.75 and a security agreement on certain described farm machinery, equipment and livestock. The security agreement was both nonpossessory and nonpurchase money. As might be expected that security agreement also covered all after acquired property together with additions, accessions and substitutions as well as proceeds thereof. On May 6, 1982, the Farmers State Bank filed a financing statement executed by both debtors on the farm machinery and on October 25, 1972, had filed a financing statement on all cattle. This latter financing statement had been continued from time to time with a last maturity date of September 8, 1987.

The Trustee sold ten Holstein cows and two Holstein heifers for a gross of $3,072.14. The Trustee sold the farm machinery for a gross of $8,070.00. It is noteworthy that the debtors claimed ten Holstein cows, 3 Holstein heifers, 4 beef cows and 2 calves as exempt property but the Trustee, the auctioneer, and the U.S. Marshals (who accompanied them because of alleged or perceived threats of debtor James R. Searcy) could only find and sell twelve head of cattle. What happened to the missing Holstein heifer, the missing four beef cattle and the missing two calves has never been explained by the debtors and the Court might well speculate that they were exempted by self help.

## DISCUSSION

The debtors claim that they are entitled to exempt all of the cattle as "personal animals" using the argument that the milk from the Holsteins was partially consumed by the family and the rest sold and the proceeds used for family living expenses. As to the beef cattle debtors claim that they were for personal consumption also. The total exemption claims of the debtors are shown by the attached Exhibit A. Taking those exemptions item by item, the Court will set out the allowable exemp-

tions. Going first to the § 513.430(1), R.S.Mo. exemption, the household goods, wearing apparel, appliances, books and musical instruments are set off to each debtor. These were not touched by the Trustee. The Court finds that the thirteen (13) Holstein and six beef cattle are not animals held for personal use.[1] The eight (8) missing cattle are more than ample to fill both the milk and meat requirements. No further allowance from the sale proceeds will be set off to the debtors.

The § 513.430(2) R.S.Mo. exemption of jewelry is set off to each debtor. Again, the Trustee did not touch any jewelry so there is no allowance from the sale proceeds.

■ The § 513.430(3) R.S.Mo. exemption (sometimes called the wild card exemption) is allowable from the sale proceeds and the Trustee is directed to pay $400.00 to each debtor from the funds on hand.

■ The § 513.430(4) R.S.Mo. exemption of tools of the trade is available to each debtor as a farmer. See *In the Matter of John D. Rasmussen*, 54 B.R. 965 (Bkrtcy. W.D.Mo.1985). The Trustee is directed to pay $2,000.00 to each debtor from the sale proceeds of the farm machinery.

■ The § 513.430(5) exemption of $400.00 to any motor vehicle is not applicable to this hearing because the Trustee touched no vehicles. Further, it was not clear who owned what vehicle and one of said vehicles seemed to be titled in a daughter's name. There would be no allowance from the sale proceeds.

■ The § 513.440 R.S.Mo. exemption (sometimes called the head of household exemption) is and may be claimed by James R. Searcy. The Trustee is directed to pay $1,100.00 from the sale proceeds to debtor James R. Searcy.

■ The § 513.475 R.S.Mo. exemption (sometimes called the homestead exemption) in the amount of $8,000.00 is claimed by debtor James R. Searcy. That is not applicable to this hearing since it applies only to real estate, not the proceeds of personalty.

Arithmetically then, it would appear that debtor James R. Searcy would receive $3,500.00 from the Trustee and debtor Betty Searcy would receive $2,400.00 from the Trustee.

■ The Court then passes to the question of whether the Farmers State Bank of Lockwood is secured or not. On the answer to that question, hangs also the answer as to whether the Trustee or the bank gets the somewhat meager balance.[2] Counsel for the bank relies on *Citizens State Bank of Nevada, Missouri v. Marvin W. Davison and Betty S. Davison*, an unpublished opinion by the Honorable Scott O. Wright, Chief District Judge for the Western District of Missouri. That opinion is controlling on this Court if it is in point, so the facts need to be briefly detailed.[3]

■ Marvin and Betty Davison were the owners of 51 shoe stores located across Southern Missouri and extending into Champaign, Illinois, to the east, Rogersville, Arkansas to the south, and mid-Kansas to the west. The question at issue was whether the failure of the Citizens State Bank of Nevada to obtain the signature of Betty Davison on the UCC-1's or financing statements invalidated the bank's lien since she was an owner (with Marvin Davison) of the property. It was uncontroverted that

---

**1.** This Judge, having spent all of his childhood summers on either his paternal grandparents' farm in northwest Missouri or his maternal grandparents' ranch in southeastern New Mexico is totally familiar with milk and beef requirements to feed a farm family.

**2.** For the exemption purposes it matters not whether the bank is secured vel non, inasmuch as its lien was neither possessory nor purchase money and if valid can be avoided by the debtors under § 522(f)(2).

**3.** Although this author was counsel for the unsecured banks in the *Davison* case and therefore bemoaned Judge Wright's decision, the author counseled the Trustee in that case in no uncertain terms to settle with the Citizens State Bank as the author was convinced in his own mind that Judge Wright's decision was legally sound and was unassailable on appeal. A settlement was made, mooting the appeal.

Betty Davison had signed the note and the security agreement. The Honorable Scott O. Wright, in the last of five opinions involving this issue, ruled that the "Davison business" had to be either a sole proprietorship, owned by Marvin Davison or a partnership between Marvin Davison and Betty Davison. If it was the former, then Betty's signature was not required. If it was the latter, then Marvin Davison (as a partner) could bind Betty Davison the other partner in a trading partnership. See *Citizens State Bank of Nevada, Missouri, Appellant v. Marvin W. Davison and Betty S. Davis, Appellees,* 75 B.R. 738 (W.D.Mo.1985).

The Court has reread Judge Wright's opinion carefully, and is thoroughly convinced as to its efficacy as to the issues ruled. However, based on the facts and language of that case and the facts of this case, the Court does not believe that the former is applicable here. The Court is particularly struck by the following language found on page 741 of Judge Wright's opinion:

"Although the Court understands that, under Missouri law generally, property acquired jointly by a husband and wife is presumed to be held in tenancy by the entireties, the for-profit business nature of this enterprise removes Appellees' relationship to this inventory from the operation of that presumption. To be sure, a partnership relationship does not necessarily arise by reason of a wife working in her husband's place of business, particularly if she works merely to "help out." *See Shawneetown Feed & Seed Co. v. R.N. Ford,* 468 S.W.2d 54, 56 (Mo.App.1971); *Cf. Miller v. Miller,* 277 S.W. 922 (Mo. banc 1925). However, Appellees' own testimony and proof clearly establishes that Betty did more than merely "help out" and that a partnership relationship exists between them."

"The difference between tenancy by the entirety and a partnership conducted by a husband and wife is that a partnership involves, in addition to [mere] ownership of property, the element of adventure— that is, carrying on a business for profit.

*Wood v. Claussen,* 207 S.W.2d 802, 814 (Mo.App.1948). Appellees insisted, and the Bankruptcy Court found, that Marvin and Betty had a community of interest in the performance of a common purpose— i.e. the shoe business. They had a joint proprietary interest, mutual right of control, and shared in the profits and/or losses as evidenced by the fact Betty received a draw rather than wages. Betty and Marvin were neither co-proprietors (a theory advanced by the Bankruptcy Court, however, a business entity heretofore unknown to this Court) nor merely tenants by the entirety of personal or real property acquired during their marriage. By their own admission, they jointly owned and operated a for-profit business enterprise; they were, therefore, partners. As a partner, Betty Davison indeed possessed an ownership interest in the inventory underlying this dispute."

The set of facts in *Davison* is far removed from the facts here. There we had the security agreement jointly signed; here we have no signature of the wife on the security agreement. There we find a 51 store chain of shoe shops; here we find a small family farm. There we find a wife who had a "draw" each week from the business; here we find no showing of the wife even writing checks. There we find the wife was in charge of decorating the stores; here we find the perhaps archaic but certainly praiseworthy situation where the wife "helped out" where needed but basically was the homemaker. Finally, there we find a purely business enterprise; here we find a fast vanishing way of life that we may all someday regret has so recently departed the American scene. The only similarity is that both sets of parties were married and that in both cases no partnership tax returns were filed. The Court, therefore, can only find that this was not a partnership and does so.

If then debtors were not partners, can it be determined this was a sole proprietorship? The Court finds not. Debtor James R. Searcy did not go out and found or buy a business divorced in style, distance or

content from his home. His home place was his work place and he conducted his business only by and through the help of his wife. The tools, the implements, even the equipment of that business were the same tools, implements and equipment of his home. The milk from his cows and the meat from his calves supplied not only a part of his income but some small part of what he and his family ate. It may well be that one spouse may be a sole proprietor in a business but not when that business is a family farm and the other spouse "helps out" and is not otherwise employed.

What then do we call the relationship of debtor James R. Searcy and debtor Betty L. Searcy to the livestock and the farm machinery? This Court believes that the answer is "co-owners" or "joint tenants" in ownership. It follows then that since they are married and live in Missouri we must also call that relationship a "tenancy by the entireties". Judge Wright in his opinion states that agency by a husband for his wife may not be established or inferred merely by reason of the marriage, citing *Link v. Cox*, 529 S.W.2d 189 (Mo.App.1975) and here the bank must of necessity rely on some theory of agency in the creation of a security interest since Betty Searcy signed no security agreement. Debtor James R. Searcy was the only signer of the security agreement and if he is not the agent for debtor Betty L. Searcy and is not a sole proprietor, then the usual rules of tenancy by the entirety apply. True, the bank obtained the guaranty of debtor Betty L. Searcy, but that guaranty only obligated her to pay the debts incurred by her husband. Nowhere in its words did it state or even mention the granting of a lien on collateral. In fact it specifically stated that it was not secured and the bank checked the block denoting its unsecured status.

If the bank wanted to be secured, it had only to require the co-owners signature on the security agreement. Here it expressly declined to do so. For all of the foregoing reasons, this Court concludes that *Davison* (Id.) is not controlling and that the funds from the sale of the cattle and machinery, after payment of the heretofore spelled out exemption amounts, are the property of the Trustee.

This Opinion constitutes Findings of Fact and Conclusions of Law under the provisions of Rule 7052, Rules of Bankruptcy.