**In the Matter of Dan Bruce SLAGLE and Beth Ellen Slagle, Debtors.**

**Bankruptcy No. BK86–730.**

United States Bankruptcy Court,
D. Nebraska.

Oct. 14, 1987.

James Shepard, Omaha, Neb., for FDIC.

John Thomas, Center, Neb., for debtors.

Kathleen Laughlin, Omaha, Neb., Chapter 13, trustee.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter came on for hearing on June 8, 1987, upon the Federal Deposit Insurance Corporation's objection to the Chapter 13 plan filed by debtors, Dan Bruce Slagle and Beth Ellen Slagle. The FDIC is the

receiver for the Bank of Taylor. Appearing on behalf of the FDIC was James Shepard of Omaha, Nebraska. Appearing on behalf of the debtors was John Thomas of Center, Nebraska.

### Facts

The debtors, husband and wife, filed for relief under Chapter 13 of the Bankruptcy Code on March 17, 1986. The debtors reside on a farm near Sargent, Nebraska. Mrs. Slagle worked as a teacher from 1975 until 1978; as an area coordinator for Quality Child Care, Inc., from 1983 until 1985; and as a family support worker with Child Protective Services from 1985 until the present. Mr. Slagle worked as a farmer during that period. Both Mr. and Mrs. Slagle testified that Mrs. Slagle has regularly worked on the farm since the beginning of the farming operation. When Mrs. Slagle was employed off the farm, she continued to help with the operations in the evenings, on weekends and during the summer.

The Slagles both testified that they had agreed prior to their marriage that any property acquired by them after the marriage would be held jointly. Evidence adduced shows that all titled property of the Slagles was held in joint tenancy.

During the course of the farming operation, Dan Slagle obtained financing for the farm by borrowing funds from the Bank of Taylor. He signed notes, security agreements and financing statements pledging various types of collateral, including livestock, crops and machinery. The proceeds of that collateral are at issue here. Mrs. Slagle did not sign any of the above-mentioned documents. Her testimony shows, however, that she was aware that her husband was pledging property in order to obtain financing for the farm.

She testified that she was aware that her husband was borrowing money for the farm and that he was pledging her share of the property. She was also aware that the entire farm, including her half, was gaining a benefit as a result of her husband's borrowing of money. Although she indicated that she sometimes did not learn that he had borrowed money until after the fact, and that she sometimes expressed opposition to what he had done, she never opposed his actions to the point of going to the Bank of Taylor and telling the banking officials that she had not authorized her husband to encumber her share of the property. Both she and her husband emphasized the fact that they discussed all decisions with regard to the operation of the farm.

The FDIC as receiver for the Bank of Taylor objected to the debtors' Chapter 13 plan. The FDIC disputes Mrs. Slagle's alleged ownership interest in the livestock, crops and machinery. Further, the FDIC alleges that, if Mrs. Slagle does own half of the collateral in question, her half was encumbered by her husband on her behalf.

### Issues

1. Does Mrs. Slagle have a one-half ownership interest in the crops, livestock and machinery?

2. Did Mrs. Slagle authorize her husband to grant a security interest in the collateral?

### Decision

1. Mrs. Slagle does have a one-half ownership interest in the collateral in question.

2. Mrs. Slagle did authorize her husband to grant a security interest in the collateral.

The FDIC's objection to the Chapter 13 plan should be and hereby is overruled as to the issue of Mrs. Slagle's ownership interest and sustained as to the issue of Mrs. Slagle's authorization of a security interest in the collateral.

### Discussion

An ownership interest in property used in the farming operation must be established by a preponderance of the evidence, the quality of which is clear, satisfactory and convincing in nature. *In re Whitesides Estate*, 159 Neb. 362 at 368, 67 N.W.2d 141 (1954). See also *In the Matter*

*of Selden,* 58 B.R. 667 (Bkrtcy.D.Neb. 1986).

■ From the evidence presented, this Court is convinced that Mrs. Slagle did have ownership of one-half of all the property on the Slagle farm. Both of the Slagles testified that they had agreed before their marriage that all property they acquired after marriage would be jointly owned. They held jointly all titled property, including land, vehicles and a mobile home. The Slagles took specific steps to establish joint ownership of the livestock brand. They had a joint checking account and both wrote checks from it. Further, Mrs. Slagle worked on the farm at least on a part-time basis, from the beginning of the farming operation. That they did not take any overt steps to establish joint ownership of the livestock, crops and machinery—all essentially untitled property—is not an indication to this Court that they did not intend joint ownership, particularly in view of their joint ownership of everything else. *See . In re Hansen,* 60 B.R. 359 (D.Neb. 1982), appeal dismissed, 702 F.2d 728 (8th Cir.1983).

■ Having established that Mrs. Slagle did own one-half interest in the farm property, the question remains as to whether she authorized her husband to encumber that property.

Section 9–203 Nebraska U.C.C. (Reissue 1980) requires that the debtor have "rights" in the collateral in order to encumber it. Section 9–112 Nebraska U.C.C. (Reissue 1980) provides that a debtor may acquire such rights in the collateral upon authorization of the actual owner. *See also Val-u Construction Company v. Contractors, Inc.,* 213 Neb. 291, 328 N.W.2d 774 (1983).

This Court has already had before it the issue of whether a wife authorized her husband to encumber their jointly owned property in *In re Schulz,* 63 B.R. 168 (Bkrtcy.D.Neb.1986). Although in *Schulz* the wife was not found to have joint ownership of the property in question, this Court went on to discuss the question of whether her actions would have authorized her husband to encumber her half of the property if she had held joint ownership. The Court

found that the wife's knowledge of and acquiescence to her husband's actions would have estopped her from denying that she had allowed him to act as her agent. Applying the reasoning in *Schulz,* this Court finds that Mrs. Slagle did authorize her husband to encumber her half of the farm property. Mrs. Slagle is an educated woman who took an active part in running the farm. She testified that she was aware that her husband was borrowing money for the farm and that he was pledging her share of the property. She was also aware that the entire farm, including her half, was gaining a benefit as a result of her husband's borrowing of money. Although she indicated that she sometimes did not learn that he had borrowed money until after the fact, and that she sometimes expressed opposition to what he had done, she never opposed his actions to the point of going to the Bank of Taylor and telling the banking officials that she had not authorized her husband to encumber her share of the property. Both she and her husband emphasized the fact that they discussed all decisions with regard to the operation of the farm. Mrs. Slagle's acquiescence to her husband's actions amounted to a ratification of them. Mr. Slagle was in effect acting as his wife's agent. As the Nebraska Supreme Court stated in *Buffalo County v. Richards,* 212 Neb. 826 at 829, 326 N.W.2d 179 (1982):

"Agency will not be presumed from the marital relation; but the fact that the wife has such knowledge [of husband's activity on her property], in the light of other evidence, may be of strong corroborative value. Owing to the close relationship existing between husband and wife, an agency by the husband may be created by slight circumstances. It is unnecessary that they enter into any formal contract of agency, nor is it necessary that the wife expressly state to her husband that she gives him authority to act. Such an agency may be inferred from the things said and acts done." *See also Mead Co. v. Doerfler,* 148 Neb. 75, 26 N.W.2d 393 (1947); *Matter of Davison,* 75 B.R. 738 (W.D.Mo.1985).

Mrs. Slagle knew what her husband was doing. She cannot now come before this

Court and claim that she did not authorize his actions.

This Court feels compelled to emphasize that the question of whether a wife has authorized her husband to encumber her property is strictly an issue of fact. The Court might reach a different result in a case where the wife took no part in running the farm and was unaware of what her husband was doing with regard to borrowing money. However, such is not the case here. The FDIC's objection is overruled as to Mrs. Slagle's ownership interest and sustained as to her authorization of a security interest in the collateral.